On motion for suit money, etc., pending appeal, submitted September
7, overruled September 23, 1913.

Submitted on briefs without argument, and modified April 21, 1914,
rehearing denied June 2, 1914.

# TAYLOR *v.* TAYLOR.*

(134 Pac. 1183; 140 Pac. 999.)

Marriage—Suits for Annulment—Alimony and Allowances.

1. The Supreme Court has no original jurisdiction to grant suit
money or an allowance for maintenance pending an appeal in a suit to
avoid a marriage, since Article VII, Section 2 of the Constitution, as
amended November 8, 1910 (see Laws 1911, p. 7), providing that the
courts, jurisdiction, and judicial system of the state, except so far
as expressly changed thereby, shall remain as at present constituted
until otherwise provided by law, but that the Supreme Court in its
own discretion may take original jurisdiction in *mandamus, quo war-
ranto,* and *habeas corpus* proceedings, has not changed the former rule
in this regard; and hence, where no appeal was taken from the circuit
court's refusal to grant such an allowance, it could not be granted by
the Supreme Court.

Marriage—Suits for Annulment—Alimony and Allowances.

2. Under Section 512, L. O. L., providing that after the commence-
ment of a suit to dissolve the marriage contract or to have it declared
void, "and before a decree therein," the court or judge may provide
by order for the payment by the husband of such amount as may be
necessary to enable the wife to prosecute or defend the suit, and for
the care, custody, and maintenance of minor children during the pen-
dency of the suit, the Circuit Court, after its final decree in such a
suit, could not make an order granting an allowance of suit money
and maintenance pending an appeal.

## ON THE MERITS.

Marriage—Annulment—Alimony.

3. The allowance to the wife of money for her living expenses and
for a surgical operation pending a suit to declare the marriage void
is not authorized in Section 512, L. O. L., authorizing the court, pend-
ing suit, to order that the husband pay, or secure to be paid, to the
clerk of court, such an amount as may be necessary to enable the
wife to prosecute or defend the suit, Section 513, providing for ali-
mony after decree declaring void or dissolving the marriage contract,
Section 511, providing that when a marriage shall be declared void

*The authorities on the question of alimony in suit to annul mar-
riage are reviewed in note in 3 L. R. A. (N. S.) 192. And as to the
right to temporary alimony on annulment of marriage, see note in
26 L. R. A. (N. S.) 500. And upon the power, upon annulling a mar-
riage. to require man to provide for support of woman or child, see
note in 5 L. R. A. (N. S.) 767.          REPORTER.

or dissolved the court shall grant to the person in whose favor the decree is rendered an undivided one third of the real property of the other, nor Sections 7040 and 7041, authorizing suit and decree to compel the husband to contribute to the support of the wife and their minor children.

[As to the necessity of the marriage relation to support allowance of alimony, see notes in 68 Am. St. Rep. 375; 71 Am. St. Rep. 88; Ann. Cas. 1913A, 664.]

**Marriage—Annulment—Alimony.**

4. The right to alimony is solely statutory, and the court has no authority to order the payment of a sum for the support of the wife pending suit to have a marriage declared void, in the absence of statutory provision therefor.

**Dismissal and Nonsuit—Voluntary Dismissal—Nature and Extent of Right.**

5. The right to dismiss an action or suit is not an absolute one that plaintiff can exercise without leave of court, and the court can compel the plaintiff to pay the costs of an action or suit before dismissing it.

**Marriage—Annulment—Attorneys' Fees.**

6. When, in a suit to have a marriage declared void, the wife has incurred liabilities for attorneys' fees and other expenses of the suit, the court may compel the husband to advance the money to pay them, and refuse him a nonsuit till he has paid them, though the order be made after the services have been rendered.

[As to "expenses" as including attorneys' fees, see note in Ann. Cas. 1914C, 1300.]

**Marriage—Annulment—Attorneys' Fees.**

7. In a suit to have a marriage declared void, where defendant, living 1,200 miles from the place of suit, was served by publication and did not hear of the suit till a decree had been entered declaring the marriage void, after which she employed counsel to have the decree set aside, which was done after a hard contest, including an appeal for which plaintiff advanced the fees for the attendance of defendant's counsel, an allowance thereafter, at the same hearing at which the court dismissed the suit on motion of the plaintiff, of $2,500 attorneys' fees, the plaintiff being worth a million dollars, is not an abuse of the court's discretion.

[As to power of court to allow attorneys' fees in matrimonial action after reconciliation of parties, see note in Ann. Cas. 1913A, 798.]

**Appeal and Error—Review—Discretion of Trial Court.**

8. The Supreme Court can review the action of trial courts in making allowances of attorneys' fees in suits to have marriages declared void only for abuse of discretion.

# From Clackamas: JAMES A. EAKIN, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE McBRIDE.

The plaintiff, Charles D.. Taylor, brought a suit to declare his marriage with defendant, Minnie N. Taylor void.    On answer being filed by defendant, plaintiff moved to dismiss, which motion was granted; the court awarded defendant $2,500 suit money and $8,665 for maintenance while the suit was pending.    From the order granting suit money and maintenance, plaintiff appealed.    Upon notice of appeal being filed, and before the justification of the surety on the appeal bond, defendant applied to the Circuit Court for suit money and maintenance pending the appeal, which was denied; the Circuit Court holding that it had no jurisdiction to make such order after making its final order of dismissal.    The defendant filed in this court a supplementary transcript showing the proceedings above recited, and moves this court for an allowance for suit money and maintenance.'

MOTION OVERRULED.

*Messrs. Flegel, Reynolds & Flegel,* for the motion.

*Mr. John F. Logan* and *Mr. Isham N. Smith, contra.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. This court has no original jurisdiction to grant suit money or maintenance pending the. hearing of a case upon appeal.    This·is settled by the case of *O'Brien* v. *O'Brien,* 36 Or. 92 (57 Pac. 374, 58 Pac. 892).    No appeal was taken by defendant from the refusal of the court to grant further suit money and maintenance, and the question, therefore, is one in which we are either required to exercise original jurisdiction or it is not here at all.    While Article VII, Section 2

of the Constitution, as amended November 8, 1910 (see Laws 1911, p. 7), has given this court. original jurisdiction in *mandamus, quo warranto,* and *habeas corpus* proceedings, the same section provides that in all other respects its jurisdiction shall remain unchanged until otherwise provided by law. This leaves the law in the same condition as it was when *O'Brien* v. *O'Brien, supra,* was decided, and that case is controlling.

2. Section 512, L. O. L., provides, in substance, that the Circuit Court may, at any time after a suit for divorce or to declare a marriage void is instituted, and before a decree therein, make an order for suit money or maintenance. The Circuit Court was without jurisdiction to make such order after its final decree had been entered. This may be a harsh rule in some instances, but we are without authority to mitigate its hardship until the statute shall have been amended.

The motion is overruled.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.

---

Modified April 21, rehearing denied June 2, 1914.

ON THE MERITS.

(140 Pac. 999.)

From Clackamas: JAMES A. EAKIN, Judge.

This is an appeal by plaintiff, Charles D. Taylor, from an order granting defendant, Minnie N. Taylor, the sum of $8,665 as alimony, and in addition thereto the further sum of $2,500 as attorneys' fees in a suit to

declare void a marriage contract. The facts are set forth in the opinion of the court: See 61 Or. 257 (121 Pac. 431, 964). Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court. 56 Or. 622 (117 Pac. xi).            MODIFIED.

For appellant there was a brief over the names of *Mr. John F. Logan* and *Mr. Isham N. Smith.*

For respondent there was a brief over the name of *Messrs. Flegel & Reynolds.*

In Banc. MR. JUSTICE RAMSEY delivered the opinion of the court.

On July 27, 1910, the plaintiff commenced a suit in the Circuit Court of Clackamas County to obtain a decree declaring void the marriage contract between the plaintiff and the defendant for alleged fraud. The parties were married in Portland, Oregon, on August 26, 1905. They lived together as husband and wife until November 20, 1909, but no children were born to them. The complaint charges that the defendant made to the plaintiff certain false and fraudulent representations as to her character and life, to induce him to marry her, and that he believed these representations, acted upon them, and married the defendant, etc. The defendant was a resident and inhabitant of the State of California, and the summons was served upon her by publication. After the expiration of the time allowed for answering, the plaintiff obtained a decree annulling said marriage contract. Within the time allowed by law for that purpose, the defendant applied to the court below for an order setting aside said decree, and permitting her to file an answer. This application was strongly op-

posed by the plaintiff; but the court below allowed said application, set aside said decree, and permitted the defendant to answer. From this order the plaintiff appealed to this court, and this court dismissed the appeal for the reason that said order was not appealable: See *Taylor* v. *Taylor,* 61 Or. 257 (121 Pac. 431, 964).

On May 21, 1912, the defendant filed in the court below a motion asking for an order requiring the plaintiff to pay, or secure to be paid to the clerk of the court below, the sum of $7,000, to enable the defendant to defend said suit, and $2,500 for the support of the defendant during the pendency of said suit, and a like sum each month, since the filing of the defendant's former motion (on October, 11, 1911), and for such other provision for the defendant's expenses in said suit, and for her support pending said suit, as to said court seemed just and equitable. The motion for alimony and expense money filed in October, 1911, does not appear to be in the record. The motion for an allowance for alimony and suit money was based upon the affidavits of the defendant, A. F. Flegel, R. Y. Williams, and J. M. Barlew, and upon the records in this case, and said motion was opposed by the affidavits of the plaintiff and John F. Logan and certain record evidence. On the 7th day of January, 1913, before the court passed on said motion for said allowances, the plaintiff filed in the court below a written motion for a decree of said court dismissing said suit. The court below heard said motion for an allowance for alimony and suit money, and the motion for the dismissal of said suit, at the same time, and allowed both motions in the same entry; but the motion for alimony and suit money

was granted first, and the suit was dismissed immediately after said motion was allowed. Before said motions were heard, the attorneys for the defendant served on the attorneys for the plaintiff notice that the court below would hear the defendant's motion for alimony and suit money, and the motion of the plaintiff for a dismissal of said suit, together at the same time, at Oregon City, on the 10th day of January, 1913, at 7 o'clock P. M., and that the counsel for the defendant would then move the said court to allow the defendant alimony from the time of the filing of the first motion therefor to the date of the dismissal, and that the court allow counsel fees to the date of the dismissal, for services rendered by counsel for the defendant, and for money expended by said counsel in the defense of said suit, and that counsel for defendant would oppose the allowance of the motion for the dismissal of said suit until the granting of the motion for said allowances. On the 10th day of May, 1913, the court below granted said motion for alimony and suit money, and allowed to the defendant for her living expenses the sum of $5,665, and $3,000 to pay for a surgical operation. The total allowance to the defendant for said two purposes was $8,665; and the court allowed, also, at the same time, the defendant the additional sum of $2,500 for attorneys' fees in said suit, and then dismissed said suit. The total allowance for the defendant and her attorneys was the sum of $11,165. The case was not tried on its merits, and no decree was rendered dissolving or annulling the marriage contract.

3. The first question for consideration is whether the court below had authority to allow the defendant anything on said motion for her living expenses or for

a surgical operation. The court below entered an order in her favor for $8,665 for said purposes. The defendant denies that the court below had authority to allow her anything for said purposes.

Section 512, L. O. L., is the only section of our statute that authorizes the court, before the final decree to require the husband in a suit for divorce or to have declared void the marriage contract, to make provision for the expenses of the suit, or for the maintenance of anyone. It is as follows: "After the commencement of a suit, and before a decree therein, the court or judge thereof may, in its discretion, provide by order as follows: (1) That the husband pay, or secure to be paid, to the clerk of the court, such an amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be; (2) for the care, custody, and maintenance of the minor children of the marriage during the pendency of the suit."

Section 513, L. O. L., provides what the court can do, when a final decree is rendered, declaring void or dissolved the marriage contract, and said section is as follows: "(1) For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not in fault; (2) for the recovery of the party in fault, and not allowed the care and custody of such children, such an amount of money, in gross, or in installments, as may be just and proper for such party to contribute towards the nurture and education thereof; (3) for the recovery of the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other; (4) for the delivery to the wife, when she

is not the party in fault, of her personal property in the possession or control of the husband at the time of giving the decree; (5) for the appointment of one or more trustees to collect, receive, expend, manage, or invest, in such manner as the court shall direct, any sum of money decreed for the maintenance of the wife or the nurture and education of minor children committed to her care and custody.''

Section 511, L. O. L., provides that when a marriage shall be declared void or dissolved, the court shall grant to the person in whose favor the decree is rendered an undivided one-third part in fee of the real property owned by the other party.

Sections 7040 and 7041, L. O. L., authorize any married woman, whose husband is able to support her, but neglects to do so, to maintain a suit against him to obtain a decree compelling him to contribute to her support, and the support of their minor children. The sections of our statute set out or referred to *supra,* are all of the statute law that we have relating to the questions in controversy in this suit.

Section 512, L. O. L., is the only statutory provision that authorizes the court in which a suit for divorce is pending, before a final decree is entered, to require the husband to make any provision for the wife, or their minor children. In this case there are no children. Subsection 1 of said Section 512 is the only part of said section that applies to this case. This subsection authorizes the court to require ''that the husband pay or secure to be paid, to the clerk of the court, such an amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be.'' Under this subsection, the husband could be required to pay to the clerk a sufficient sum to cover attorneys' fees, witnesses' fees, and necessary expense

of traveling in attending to the case; but it does not authorize the court to compel the husband to support the wife or pay surgical bills during the pendency of the suit. Possibly, the husband may be liable for such expenses, but payment thereof cannot be enforced under said Section 512. The defendant never resided in this state. She resides in California, and the plaintiff may be liable under the laws of that state for her support, and for her surgical bills; but, as to that, we do not know.

It seems clear to us that Section 512 confers no authority upon a court to compel the husband, during the pendency of a suit for divorce and before decree therein, to pay the wife alimony for her support or for medical or surgical attendance. In a suit brought by the wife for that purpose, courts of equity may compel the husband, in a proper case, to provide for her support; but relief of that sort cannot be obtained under Section 512, L. O. L.

Section 513, L. O. L., applies to suits for divorce, when a decree is granted, dissolving or declaring void the marriage contract, and under that section the court has ample power to grant alimony, etc. But in this case no divorce was granted, and hence said section has no relevancy to the question for decision in this case.

4. We find no statutory authority for allowing the wife alimony for her support or surgical bills in a suit for divorce, excepting when a decree of divorce is granted. The question arises: Is there any authority in this state, independent of the statute, for granting such alimony? Our statute expressly provides that certain stated things may be done in a divorce suit, before a decree is entered, and that certain other things may be done when a decree of divorce is granted. Can

alimony *pendente lite* be granted for the support of the wife without statutory authority?

In the case of *Weber* v. *Weber,* 16 Or. 164 (17 Pac. 866), the court says, *inter alia:*

"It was conceded upon the argument by both parties that the power to grant a divorce, and such other relief as is usually incident thereto, is purely statutory."

The court in that case adopted the view that the powers of the court in divorce cases are statutory.

In *Huffman* v. *Huffman,* 47 Or. 615 (86 Pac. 594, 114 Am. St. Rep. 943), Mr. Justice Moore, delivering the opinon of the court, says:

"A few courts of last resort in the United States have maintained that a grant of power to sever the marital relation carries with it by necessary intendment authority to allow permanent alimony in the absence of any enactment to that effect. * * The great weight of judicial utterances, however, is to the effect that all authority to award alimony on decreeing a dissolution of the marriage must be found in the statute expressly conferring the right, which legislation is in general declaratory of the ecclesiastical law."

In *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705), the court says:

"The authority to grant divorces and to award alimony though conferred upon a court by statute, carries with it such powers as are expressly given and also such as may necessarily be incidental to its exercise."

In *Rowell* v. *Rowell,* 63 N. H. 225, the court says:

"The question is whether an order can be made granting the libelee an allowance for her support during the pendency of the libel. It is claimed that such an order is authorized by Section 12, c. 182, Gen. Laws, which provides that, 'upon any decree of nullity or divorce, the court may restore to the wife all or any

part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just, and may compel the husband to disclose, under oath, the situation of his property, and, before or after such decree, may make such orders and use such process as may be necessary.' * * No other provision for the maintenance of the wife, or for alimony, by a decree of this court, has been known, except the provision authorized by this statute, unless a small sum, sometimes ordered to be paid to the wife to enable her to defend against the application of the husband for a divorce, may be termed an allowance for her support. * * The order asked for is for alimony before there has been a decree of nullity or divorce. It is contrary to the construction of the statute, settled by long and uniform practice.''

In *Harrington* v. *Harrington,* 10 Vt. 505, the court says:

''The statute gives this court, which, in applications for divorces, acts as a court of law, no power to grant alimony, except after divorce granted.''

In *Shannon* v. *Shannon,* 68 Mass. (2 Gray), 287, the Supreme Court of Massachusetts says:

''By the English law, alimony, *pendente lite* may be granted. And the argument for the petitioner is that, by conferring jurisdiction in cases of divorce and alimony, authority was conferred to grant all such alimony as the English courts could grant. But we are of opinion that the authority to grant alimony * * is confined to the cases expressly mentioned in the statutes. And we find that, since the Constitution was adopted, all the statutes, which authorize the granting of alimony, authorize it only after a decree of divorce. * * If the power, which the petitioner now invokes, ever existed in any tribunal in Massachusetts, either during the time of the colony or the province (of which no evidence has been submitted to us), we are of the opinion that it ceased, when jurisdiction of divorces

and alimony was transferred to this court, and the cases in which it might decree divorces and alimony were specified.''

In *Therkelsen* v. *Therkelsen*, 35 Or. 77 (54 Pac. 886) (a suit for alimony only and not for divorce), the court, discussing the power of the court in divorce cases to make allowances pending the suit, says:

''The power of the court to make allowances for the wife during the pendency of the suit for divorce is statutory, and may be exercised: (1) To enable the wife to prosecute or defend the suit, as the case may be; (2) for the care, custody, and maintenance of the minor children of the marriage.''

It will be noticed that, in stating for what purpose allowances can be made *pendente lite,* the court in the case just cited did not include allowances for support of the wife.

In *Wilson* v. *Wilson,* 19 N. C. 378, the court says:

''There is no enactment which expressly confers the power (to allow the wife for support *pendente lite*), and those which are express on the subject of alimony seem rather to deny than grant it; * * but whatever may be the course dictated by policy, until the legislature shall have otherwise provided, we think the courts are not authorized to make allowances for alimony, before the complaint of the wife shall be finally tried.''

In 1852 the legislature of North Carolina amended the law of that state as to allowing alimony, and in *Reeves* v. *Reeves,* 82 N. C. 351, referring to this law, the court says:

''And while the act of 1852 was partly declaratory of the common law, it was in one sense a restrictive statute. It only gave alimony to the wife, *pendente lite,* when she was the petitioner in a proceeding for divorce, and impliedly repealed the doctrine of the

common law, which gave the courts power to allot it to her when she was a defendant,'' etc.

In *Morton* v. *Morton,* 33 Mo. 617, 618, the court says:

''The right of the wife to alimony *pendente lite,* whether she stood in the position of plaintiff or defendant, was an acknowledged common-law right in England, enforced there by the ecclesiastical courts, who had exclusive jurisdiction of all controversies matrimonial; and, we having adopted the common law, it is likewise a common-law right here, unless the common law in this respect is modified by the section of the act we have quoted. If the statute concerning divorce had been silent on the subject of alimony, we would not hesitate to say that upon common-law principles, the power of the Circuit Court * * was ample to order the allowance in this court; but as the act, in giving the power to award alimony *pendente lite,* gives it expressly where the wife is plaintiff, it must be understood as an expression of the legislative will that the power shall be withheld when the wife is defendant. Upon any other supposition, the provisions of the act under consideration would be without meaning or operation.''

There is a conflict in the decisions as to whether the common law, in relation to divorces and the granting of alimony, is in force in the United States, in the absence of statutes covering those subjects. This court held, in *Huffman* v. *Huffman,* 47 Or. 615 (86 Pac. 594, 114 Am. St. Rep. 943), that ''the great weight of judicial utterances, however, is to the effect that all authority to award alimony on decreeing a dissolution of the marriage must be found in the statute expressly conferring the right, which legislation is in general declaratory of the ecclesiastical law.'' We conclude that it is the established rule in this state that all claims to alimony and allowances in suits for divorce are to be determined by our statute on that subject. This

statute should be reasonably construed. We believe that the question whether our courts have authority to allow *pendente lite* a wife alimony for her support or medical treatment has never been determined by this court. In a case or two the court has referred to such allowances, but we believe such references were mere *dicta*. The question for decision depends upon the meaning of Section 512, L. O. L. The only allowances authorized by said section to be made are: (1) ''That the husband pay, or secure to be paid, to the clerk of the court such an amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be''; and (2) ''for the care, custody and maintenance of the minor children of the marriage, during the pendency of the suit.'' This section authorizes the court to require the husband to provide funds to enable the wife to prosecute or defend the suit as the case may be, and for the maintenance of the minor children during the pendency of the suit; but nothing is said in said section concerning the support of the wife *pendente lite*. Section 513, L. O. L., authorizes the court, when a decree of divorce is granted, *inter alia,* to grant a decree ''for the recovery of the party in fault, * * such an amount of money, in gross or in installments, as may be just and proper for such party to contribute * * to the maintenance of the other.'' Section 512, L. O. L., expressly authorizes the court to require the husband to provide funds to enable the wife to maintain or defend the suit, and for the maintenance of minor children; but it omits to authorize the court to require the husband to provide for the maintenance of the wife *pendente lite*. Section 513, L. O. L., expressly provides that by the decree of divorce the court may provide for the recovery of money from the party in fault for the support of the

other party. 36 Cyc., page 1122, says: "In accordance with the maxim '*expressio unius est exclusio alterius,*' when a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned." We conclude that the legislature did not intend that a husband should be required to provide support for his wife *pendente lite* and intended that that matter should not be passed upon until a decree of divorce should be granted. The wife could proceed under Sections 7040 and 7041, L. O. L., to obtain support *pendente lite,* and under our statute (Section 7039, L. O. L.) the husband is liable for the support of the family. Probably the wife might exonerate him from this liability by misconduct. We hold that the court below exceeded its authority in allowing the defendant $8,665 for her support *pendente lite,* and for a surgical operation. The court below allowed the plaintiff also, $2,500 as attorneys' fees in said suit.

5, 6. The plaintiff contends that the court below had no authority to make said allowance, and, also, that the amount allowed is excessive. Said suit was not tried on the merits, and, before the court below made said order of allowance, the plaintiff filed his written motion for a dismissal of the suit. The motion for said allowance was filed quite awhile before the filing of the motion for the nonsuit. Both motions were heard at the same time, and the motion for the allowance was allowed first, and the case was dismissed immediately after the granting of the allowance. The plaintiff contends that the court had no right to make any allowance after the motion to dismiss was filed, and that allowances can be made only for future services or expenses. The motion for the allowance was filed on May 12, 1912, and the motion to dismiss the suit was

filed on January 7, 1913, more than seven months after the motion for the allowance was made.

The right to dismiss an action or a suit is not an absolute one that the plaintiff can exercise without leave of the court. The court can compel a plaintiff to pay the costs of an action or a suit before dismissing it: *Mitchell* v. *Downing,* 23 Or. 450 (32 Pac. 394).

This court held, in *Jones* v. *Jones,* 59 Or. 314 (117 Pac. 414), that, in a divorce case, when an order for suit money had been made, and the money had not been paid, and the parties had settled the case, and asked that the case be dismissed, the court could render such judgment or order for suit money as should be reasonable and proper, before dismissing the case. When, in a divorce case, the wife has incurred liabilities for attorneys' fees, and other expenses of the suit, the trial court may, after such expenses have been incurred, by order, compel the husband to advance the money to pay them, in a proper case, and may refuse to grant the husband a nonsuit until he has paid them: *Schulz* v. *Schulz,* 128 Wis. 28 (107 N. W. 302); *Courtney* v. *Courtney,* 4 Ind. App. 221, (30 N. E. 914); *Woodward* v. *Woodward,* 84 Mo. App. 328; *Lamy* v. *Catron,* 5 N. M. 373 (23 Pac. 777); *Waters* v. *Waters,* 49 Mo. 385; *Jones* v. *Jones,* 111 Ill. App. 396; *Thorndike* v. *Thorndike,* 1 Wash. Ter. 175.

7. There are cases holding the reverse of the above proposition, but we think that the rule stated *supra* is the better one. A wife, sued for divorce, may employ counsel to attend to the case for her, and, at any time before the final decree in the case is granted, the court may, in its discretion, require the husband to pay for the services so rendered, although the order requiring such payment be granted after the services of counsel have been rendered. We hold that the court

below had authority to allow to the defendant the amount of money necessary to pay all the reasonable expenses that she was subjected to in making her defense. The plaintiff is worth about a million dollars, and is able to pay all expenses of said suit. It seems that he and the defendant lived together a little more than four years, and the defendant swears that they spent about $3,000 per month while they lived together. He gave the defendant more than $30,000 during the time that they lived together; but the defendant testifies that she has practically nothing left except some jewelry and clothing, and hence she contends that the plaintiff should be compelled to pay all the expenses of her defense.

The defendant was never a resident of this state, and, at the time that this suit was commenced, and for a long time prior thereto, she resided in California, about 1,200 miles from the place where this suit was commenced. The summons was served by publication, and a decree declaring the marriage contract between the parties void was obtained by the plaintiff without the defendant's having received knowledge that any suit had been brought. The defendant learned of the rendition of said decree, and employed counsel and applied to the court below to have said decree set aside, and be permitted to answer. After a hard contest, the court below set aside said decree and allowed her to answer. The plaintiff then applied to the court below for a reconsideration of the motion to set aside the said decree. This application was denied. The plaintiff then appealed to this court, from the order of the court below setting aside said decree and permitting the defendant to answer. This court, as stated *supra,* dismissed said appeal. It seems that the plain-

tiff advanced funds to pay the defendant's counsel for their services in attending said cause in the Supreme Court, and hence their services on that appeal will not be considered in passing on the allowance made by the court below for counsel fees.

8. In her affidavit for an allowance, the defendant says that, by reason of the great distance from her home to the place where this suit was brought, she has spent in traveling and other expenses, in attending to her defense, $1,000. The plaintiff in his affidavit denies that she spent $1,000; but he does not deny that she spent any amount less than that. The proceedings in this case were all had in the court below, and that court was in a better position to judge of the value of the services of the defendant's counsel than this court is. The court below had knowledge of all the services that were rendered in that court. The mass of papers printed in the abstract shows that a large amount of work was done by the defendant's counsel. The court below allowed the defendant for attorneys' fees the sum of $2,500, but did not allow her anything for money spent by her for traveling and other expenses connected with her defense. The amount allowed for attorneys' fees appears to be very large. The statutes vest the authority in the trial courts to make allowances in their discretion. This court can review the action of trial courts in making such allowances only for abuse of discretion. Trial courts should be careful in passing on such matters, and should in no case allow more than a reasonable sum, whether the husband be rich or poor. Taking into consideration all the facts of this case, we are unable to say that the trial court abused the discretion vested in it in making said allowance.

The order of the court below is modified so as to allow the defendant $2,500 as attorneys' fees and disallow the whole of the $8,665 for her support and for the surgical operation.          MODIFIED.