Submitted on application for alimony *pendente lite*. Application denied March 24, 1925, argued March 4, dismissed March 29, 1927.

## ELSIE M. HERSHEY v. HOMER H. HERSHEY.

(234 Pac. 288; 254 Pac. 813.)

**Divorce—Application for Alimony Pendente Lite First Made in Appellate Court must be Denied.**

Application for support money, counsel fees and expenses pending appeal first made on original application in appellate court must be denied.

### ON THE MERITS.

**Divorce—Wife's Action for Divorce on Ground of Opprobrious Epithets, Insinuations as to Legitimacy of Children, and Desertion, Held not Sustained by Evidence.**

1. Wife's action for divorce on ground that husband applied various opprobrious epithets to her and made statements insinuating that he was not father of one of children, and for his desertion, *held* not made out by preponderance of the evidence.

Divorce—Complete Paralysis of Husband's Body from Waist Down Held not to Exonerate Wife from Marital Obligations.

2. Injury to husband resulting in complete paralysis of his body from the waist down did not exonerate wife from her marital obligation so as to entitle her to divorce.

Divorce, 19 C. J., p. 143, n. 53, p. 145, n. 62.

From Benton: George F. Skipworth, Judge.

In Banc.

APPLICATION DENIED.

For the application, *Messrs. Weatherford & Wyatt.*

*Contra, Mr. Arthur Clarke.*

McBRIDE, C. J.—This is an application to this court to compel the defendant to pay such sum as this court deems reasonable for plaintiff's support, counsel fees and expenses pending the appeal. No application of this character was made in the court below, but this is an original application here, and must be denied upon the authority of *O'Brien* v. *O'Brien,* 36 Or. 92 (57 Pac. 374, 58 Pac. 892), and *Taylor* v. *Taylor,* 70 Or. 510 (134 Pac. 1183, 140 Pac. 999).

It appears pretty clearly from the record that both plaintiff and defendant are in indigent circumstances, and that the defendant's expenses so far, in relation to this appeal, have been advanced gratuitously by his attorney. In view of the plaintiff's poverty we are disposed to relax the rule requiring printed briefs, and will permit typewritten briefs to be filed by her in answer to the brief filed by defendant.

The application for an allowance here is denied.

APPLICATION DENIED.

2. Failure to support because of physical disability as ground for divorce, see note in 43 L. R. A. (N. S.) 255. See, also, 9 R. C. L. 309.

## ON THE MERITS.

For appellant there was a brief and oral argument by *Mr. Arthur Clarke.*

For respondent there was a brief over the names of *Messrs. Weatherford & Wyatt* and *Messrs. Middlekauf & Penson,* with an oral argument by *Mr. J. K. Weatherford.*

BURNETT, C. J.—The parties to this suit were married in San Francisco, September 20, 1909. From there, after a visit in Oregon, they went to Cleveland, Ohio, where the defendant's parents resided, and lived there about three years, during which time they had two children. The plaintiff's health not being good in that country, it was agreed that she should come to Oregon, where her parents were living at the time, and that the defendant should follow in the course of a few months. While in Ohio he was an employee on the street railway and that seems to have been his ordinary occupation. On coming to Oregon they went to live on a small ranch belonging to the plaintiff's father in Lincoln County, near Nashville. They lived in that vicinity following the dairy business until September 27, 1919. On that date, while gathering plums, a branch of the tree broke and the defendant fell to the ground, suffering a fracture of some of the dorsal vertebrae. He was immediately taken to Portland for treatment but the result was complete paralysis of his body from the waist down. His father came from Ohio and assisted in his nursing until May 5, 1920, when he took the defendant, his son, back to Ohio, where he could care for him better than in this state. Meanwhile, with the

121 Or.—9

plaintiff's consent, the defendant caused all the stock and other personal property on the ranch to be sold and the entire proceeds of the sale, amounting to some $2,000, to be paid to the plaintiff. Out of that she paid his hospital bill, bought herself a small tract of land in Lincoln County and gave him $100 toward his traveling expenses to Ohio. There was some correspondence between them after he went to Ohio but that dwindled and finally on February 27, 1922, she filed her complaint in this suit. The usual allegations of marriage and residence in the State of Oregon are made and not denied. It is also stated that there are six children, aged from eleven years to two years.

As grounds for divorce in her first cause of suit, the plaintiff attributes to the defendant various opprobious epithets which she avers he applied to her at various times from three to five years before the commencement of the suit and which it is not necessary to repeat in this opinion. She also asserts that he said to her in the presence of her mother: "I don't know whether that is my child or not," intending to insinuate that he was not the father of one of his children. For a second cause of suit, the complaint alleges that on or about May 10, 1920, the defendant wilfully deserted the plaintiff and continues to live separate and apart from her without her will or consent. This desertion is predicated upon his return to Ohio in company with his father, as mentioned above.

The answer denies all the imputations of cruel and inhuman treatment attributed to the defendant and denies the desertion. The defendant further describes the accident resulting in his paralysis and avers that, by agreement between himself and the plaintiff, he went to Ohio, where his parents and rela-

tives could take care of him and that he has been at
all times willing and desirous of remaining with his
own family if circumstances and conditions had been
such that they were able to care for him, and never
has intended, and does not intend, to desert or aban-
don the plaintiff or their children. This is traversed
by the reply. In brief, the plaintiff seeks a divorce
and the defendant is resisting it without asking for
one himself.

1. The testimony of the defendant and other wit-
nesses in Ohio was taken by deposition about August
15, 1923. The testimony for the plaintiff was taken
before the Circuit Court at the trial on January 10,
1924. In his testimony the defendant categorically
denied every allegation of the complaint charging him
with any wrong to the plaintiff. The plaintiff testi-
fies to most of the assertions of her complaint as to
the opprobrious epithets applied to her and, as to
neglect of her during periods of confinement and the
like, she is somewhat corroborated by her mother and
her aunt. Throughout her testimony there is a flavor
of disingenuousness. Although plied with leading
questions by her own counsel, to a large extent her
testimony gives the reader an impression that she is
not altogether candid in her statements and is in-
clined to be evasive. For instance, she imputed to the
defendant the statement: "I don't know whether any
of these children are mine or not," following which
on direct examination she was asked these questions,
which were answered as follows:

"Q. Did he have any reason to make a remark of
that kind? A. I do not see why a real father would.

"Q. Did he have any reason to? A. No, I don't
think so.

"Q. Well, you know whether he had any reason to,
or not? A. Not unless—

"Q. He did not have any reason to make that remark? A. Well, I don't think so.

"Q. Well, you know whether he is the father of the children is the question I am asking. A. Yes, but this happened over some medicine he wanted to make the children take, or something like that."

2. A careful reading of the whole record seems to indicate that these parties, without previous experience, went to live upon a little dairy farm in the sparsely settled portion of Lincoln County and, of course, had to and did labor very hard. Like other housewives in that community she assisted her husband in milking the cows. They accumulated, as the result of hard work by both of them, eleven cows and other livestock, and evidently found that kind of life very strenuous. Her case is supported slightly by the testimony of her aunt, who confesses she does not like the defendant. Her reputation for truth and veracity is shown by several witnesses to be bad and there was no attempt on the part of the plaintiff to support it. Her other witnesses are her mother, her sister and her oldest child, and they give testimony principally about the hard life she led and the paucity of the defendant's support of her. Taken altogether, and remembering that, although the things of which she has complained are said to have happened three to five years before filing the complaint, there was no indication that she wanted a divorce until more than two years after his back was broken, it would seem that her life was not rendered burdensome by any treatment the defendant gave her. Apparently they had lived peacefully for at least two or three years before the accident. The neighbors all speak well of him, of his industry and of his treatment of his wife and his family. In short, without discussing the mat-

ter in detail, she took him at the hymeneal altar "for better or for worse." It may be that his affliction has separated them but it has not exonerated her from her marital obligation. The plaintiff has not proven her case by a preponderance of the testimony. Her suit will, therefore, be dismissed but neither party shall recover costs or disbursements from the other. SUIT DISMISSED.

McBRIDE, BEAN and BROWN, JJ., concur.