Argued February 7, affirmed February 21, petition for rehearing
denied April 4, 1951

# EDWARDS *v.* EDWARDS

227 P. 2d 975

*William J. Crawford,* of Portland, argued the cause and filed briefs for appellant.

*Howard P. Arnest,* of Portland, argued the cause for respondent. With him on the brief was William S. Nash, of Portland.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK and WARNER, Justices.

WARNER, J.

This is an appeal from a divorce decree granting plaintiff a divorce from defendant and the custody of their only child, a son then fifteen months old. The decree also gives plaintiff the right to take the child to Australia and there live with her mother.

While the defendant concedes that the court below was right in giving the mother custody of their boy, he claims that it erred in conferring on her the right to take the child beyond the continental limits of the United States, contending that it will be contrary to their son's welfare to do so. That is the sole question before us.

The plaintiff was born and reared in China and is the daughter of British parents. She had spent her entire life in the Orient before becoming the defendant's war bride. For many years prior to his death in 1949, her father was manager in China for Chrysler Motors, an American concern. Her mother resides in Australia and appears not only to be in affluent circumstances but able and anxious to furnish a home for her daughter and grandson and without any contribution from the defendant.

The defendant is a man of fine academic background, regularly employed as a teacher in the public schools of this state. He was a lieutenant in the United States Army when he married plaintiff in Calcutta in 1946.

The question raised by this appeal brings before us a tragic aftermath of a war-time marriage between parties of different nationalities who discover too late that they are unable to successfully live in harmonious

accord and share in common the joy of raising and educating their child. Even though this young boy is the object of our earnest solicitude and the subject of our sole concern, we are compelled to admit that the law has no perfect answer for problems such as the one which this appeal presents. At best, we can at this time only consider and apply currently known facts and having done so, hope that time and favorable circumstances will so enrich and endow the life of the unfortunate child that our present judgment will thereby be vindicated.

■ We repeat, our sole concern here is with the welfare of the infant son of plaintiff and defendant. The right to his custody is not a pawn to be employed as a reward to one parent nor must it be allowed to be applied as a punishment to the other. The situation confronting us is indeed unique, as is attested by the paucity of precedents for our guidance.

■ The only alternative to an affirmation of the lower court's judgment is to deny plaintiff the right to remove the child from the court's jurisdiction, and this we would have no hesitation in doing if his removal would subject him to political and social ideologies or conditions in conflict with those which have been traditionally esteemed in this country. We take judicial notice that Australia, as a place of residence, does not suggest such objections. On the other hand, if we deny plaintiff the right to establish a new home for her son beyond the borders of the United States, we are convinced that her manifested maternal devotion will never permit her to abandon her son and go thence alone. She will reluctantly and unwillingly remain in this country—a country where she has lived for so few years and those few in an unhappy environment. If

we should do so, we would in effect penalize her by a species of exile from a life and place for which she rightfully and naturally yearns and to which she is by training and experience adapted. We learn from the record before us that if the mother is so coerced to live in the United States with her boy, she will have to support herself and during her working hours be compelled to entrust the care of her child to the supervision of strangers or possibly relatives of defendant now unfriendly to her. We believe the consequent unhappiness of a mother so required to live and labor in a strange world to which she is linked against her will by judicial decree would undoubtedly tincture and perhaps eventually warp unfavorably the life of the child entrusted to her custody. The resultant atmosphere, under such circumstances, might be far less conducive to the welfare of the child than the promise of a more idyllic pattern of life and living offered by a new home in Australia. Had the child's mother been a native of this country with friends and relatives here and a familiarity with our ways in the sense that she is familiar with those of her own ancestral training and background, we might find it difficult to approve the lower court's decree.

The defendant's repeated assertions insisting that plaintiff support herself without his financial help have tended to tarnish the sincerity of his claim to an unselfish interest in the welfare of his infant son and suggest to us that they may be the reflection of a vindictive spirit which seeks to harass and punish the mother of his boy. We are not impressed that he could not, if he would, make some contribution to that end. Defendant apparently has not learned that one who seeks equity must do equity.

The authority for the circuit court's action is found in § 9-914, O.C.L.A., as amended by ch. 228, Or. Laws, 1947, reading:

"Whenever a marriage shall be declared void or dissolved, the court shall have power further to decree as follows:

"1. For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not in fault."

■ It has been held that the courts of this state, in the exercise of their discretion, may properly relinquish jurisdiction over the child of divorced parents and permit it to go to another state where one of its parents resides. *Levell v. Levell,* 183 Or. 39, 44, 190 P. 2d 527; *Phillips v. Phillips,* 175 Or. 14, 27, 149 P. 2d 967. This may be done even though such removal may render it inconvenient for the other parent to visit the child. *Griffin v. Griffin,* 95 Or. 78, 87, 187 P. 598. We also believe that the circuit courts have power in exceptional cases to permit such a child to be taken to a foreign country when the court believes it will be conducive to the best interest of the child. *Wilson v. Mitchell,* 48 Colo. 454, 111 P. 21; *Lane v. Lane* (Mo. App.) 186 S.W. 2d 47, 48.

■ We have not only carefully examined the record before us but, in coming to our conclusion, have given much weight to the opinion of the learned judge in the court below. He is one of the senior judges of the circuit court in terms of service with a broad experience in domestic problems requiring judicial answer. He not only had both parties before him but gave the novel

problem presented by this matter long and serious deliberation before coming to his final conclusion. We think that the welfare of the child will be best served by allowing the plaintiff to take her son to Australia and that the lower court did not abuse its discretion in authorizing her to do so.

There remains but one further matter for our consideration. It is plaintiff's motion filed in this court seeking an allowance of additional attorneys' fees in the amount of $250.00. As authority for this, plaintiff cites us to *O'Brien v. O'Brien,* 36 Or. 92, 57 P. 374, 58 P. 892, and *Goodman v. Goodman,* 165 Or. 141, 152, 105 P. 2d 1091. The O'Brien case, as we shall later demonstrate, is diametrically opposed to plaintiff's contention. The Goodman case does, however, seem to support the motion. This apparent conflict of authority merits clarification.

Our first pronouncement on the subject of the allowance of attorneys' fees in the court under an original application is found in *O'Brien v. O'Brien,* supra, where Mr. Justice ROBERT BEAN spoke for the court. This was followed by an opinion by Mr. Justice MCBRIDE in *Taylor v. Taylor,* 70 Or. 510, 134 P. 1183, 140 P. 999. Then came *Hengen v. Hengen,* 85 Or. 155, 166 P. 525, a decision by Mr. Justice BURNETT. These three cases were adverse to such an application. We are of the opinion that these cases correctly state the rules which should govern us with reference to the instant application and all other applications of like character, in the absence of appropriate legislation conferring upon this court power to receive and act upon such applications as matters which can properly originate in this court.

■ From the cases last mentioned, we glean the following rules:

(1) This court has no constitutional power to receive or act upon any application for suit money or maintenance *pendente lite* filed here as an *original application* in the absence of legislative authority. *O'Brien v. O'Brien,* supra, at page 93; *Taylor v. Taylor,* supra, at page 512.

(2) All *original* jurisdiction is exhausted by the action of the lower court under § 9-913, O.C.L.A., and this court can only act in its appellate capacity upon such subject matter when a proper appeal is taken from an order of the circuit court refusing to grant any or further suit money. *Taylor v. Taylor,* supra, at page 512; *Hengen v. Hengen,* supra, at page 164.

(3) In the consideration of such an appeal, we are limited in our review to the testimony adduced in the court below concerning the amount or items of appellant's necessary expenses in defending the suit, because, as said in *Hengen v. Hengen,* supra, at page 164: "Any additional allowance, therefore, in this court would be arbitrary and without justification in the record."

We are cognizant that since the 1910 amendment to Art. VII, § 2, Constitution of Oregon, the legislature is empowered to confer such authority upon this court. *Taylor v. Taylor,* supra, at page 512; *Hengen v. Hengen,* supra, at page 164. A somewhat similar authority was granted us in 1919 under The Insurance Law (see § 101-134, O.C.L.A.) and under the Workmen's Compensation Act (see § 102-1774, O.C.L.A., as amended by ch. 302, Or. Laws, 1945; *Tice v. State Industrial Accident Commission,* 183 Or. 593, 616, 195 P. 2d 188). However, we have not been cited to such statutory

power, if existent, nor have we been able to discover by our own inquiry any applicable act. Plaintiff, in support of her motion made in this court, calls our attention to § 9-913, O.C.L.A., as amended by ch. 142, Or. Laws, 1945. So far as pertinent, it reads:

"After the commencement of a suit, and before a decree therein, the court, or judge thereof, may, in its, or his discretion, upon proper showing of the necessity therefor, provide by order as follows:

"(1) That the husband pay, or secure to be paid, to the clerk of the court, such amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be, and also such amount of money as may be necessary to support and maintain the wife during the pendency of the suit."

Obviously, this is a power conferred only on the circuit court and when once exercised, as said in *Hengen v. Hengen,* supra, exhausts the original jurisdiction on the subject.

The rules as laid down in the O'Brien, Taylor and Hengen cases have governed our holdings in *Arndt v. Arndt,* 146 Or. 347, 25 P. 2d 1118, 30 P. 2d 1; *Berry v. Berry,* 139 Or. 401, 2 P. 2d 1110; *LaFollett v. LaFollett,* 138 Or. 411, 2 P. 2d 1109, 6 P. 2d 1085; *Hershey v. Hershey,* 121 Or. 127, 234 P. 288, 254 P. 813; and *White v. White,* 100 Or. 387, 389, 190 P. 969, 197 P. 1080— in so far as it rules upon the motion before the hearing on the merits of this appeal.

Notwithstanding our application of the doctrine stemming from the O'Brien case in the cases last mentioned, there have been several opinions in divorce cases wherein it may seem that allowances have been made upon original application in this court. For want of a clear or sufficient statement concerning the record upon which such action was predicated, it may appear

that we have inferentially overruled the doctrine which has its genesis in the O'Brien case. Cases which exemplify this seeming departure and as a warrant for the filing of the motion now before us are *Spath v. Spath,* 177 Or. 375, 162 P. 2d 511; *Mueller v. Mueller,* 165 Or. 153, 105 P. 2d 1095; *Goodman v. Goodman,* supra; *Thomsen v. Thomsen,* 128 Or. 622, 275 P. 673; and *White v. White,* supra, at page 403—in so far as it rules upon the motion after a hearing upon the merits.

In order that there may be no longer any doubt or confusion on the subject, we expressly overrule the last cases mentioned and all others in so far as they appear to be authority for the proposition that this court will receive and act upon any application in divorce suits for suit money or maintenance as an original matter. Until there is adequate legislation to the contrary, we will adhere to the doctrines as expressed in the O'Brien, Taylor and Hengen cases, as by us above summarized. This conclusion dictates that we disallow plaintiff's motion for additional attorneys' fees.

■ We realize that the rule to which we adhere may at times work some hardship so far as the allowance of attorneys' fees on appeal is concerned, but it is one that cannot be corrected here by judicial fiat. The legislature has conferred upon the circuit courts the power to grant temporary maintenance to the party not in default during the pendency of an appeal to the Supreme Court. § 9-914, O.C.L.A. However, the power to grant additional suit money to cover the costs of such an appeal has not yet been given to the circuit courts or this court.

Plaintiff's motion for additional attorneys' fees is denied and the decree is affirmed.