Argued November 28, affirmed as modified December 19, 1951

# WILDER *v.* WILDER

238 P. 2d 737

*James L. Means,* of Portland, argued the cause and filed a brief for appellant.

*E. Earle Feike,* of Portland, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

## LATOURETTE, J.

Plaintiff and defendant were married in Davenport, Washington, on May 9, 1939. Two children, Velna LaJean Wilder, aged six years, and Brian LeRoy Wilder, aged three years, were born of said marriage. In her divorce complaint plaintiff alleged that defendant threatened to kill her and the children; that defendant was guilty of "cruel and inhuman" treatment in that he told her on numerous occasions that he did not love her and "for her to get out of the home"; that defendant on numerous occasions "had affairs with other women and stepped out on the plaintiff and stayed away from home nights leaving plaintiff and the children alone"; that on numerous occasions defendant accused plaintiff "of wrongful and immoral conduct with other people and called her a whore, a chippy and a bitch." She asked for a divorce, custody of the children, support for herself and minor children and attorney's fees. She later filed a supplemental complaint in which she charged that defendant cohabited with his housekeeper, occupying "the same bed and bedroom."

Defendant generally denied the cruel and inhuman treatment and the alleged affair with his housekeeper and filed a cross-complaint asking for a divorce from plaintiff, charging plaintiff with being "cruel and inhuman" toward him in two particulars: that plaintiff informed him that "she had no love or affection" for him, and that she had "consorted with others in

a manner highly inconsistent with the marriage relation." That in August, 1948, she left the family home, defendant and the children and "informed defendant in writing that she never intended to return" to him. Plaintiff in her reply denied the allegations of cruel and inhuman treatment.

The trial court entered a decree in favor of plaintiff, gave her the custody of the children, ordered defendant to pay $50 per month toward the care and support of each child, gave plaintiff the piano and an undivided one-half interest in the furniture and furnishings in the parties' home, and also gave her one-third of $650 arising out of the sale of the equity of their home, which sum defendant's attorney holds in trust. Plaintiff was awarded $200 attorney's fees and costs. Defendant appeals.

■ We have given careful consideration to the entire transcript of testimony, and it would serve no useful purpose to analyze the same. Plaintiff's charges of infidelity on her husband's part are supported by corroborating testimony; in fact, one of the witnesses testified that she had had illicit relations with defendant. On the other hand, defendant's charges against his wife are not sustained but are based on suspicion and innuendoes. The trial judge saw and heard the witnesses and is in a far better position than we to judge their credibility. Plaintiff is entitled to the divorce.

The main controversy is over the custody of the two children. Plaintiff admits that defendant was a good father, and defendant admits that plaintiff was a good mother to them. He testified:

"Q Up to the time she left did she take good care of the children?

"A Oh, yes, I have no—

"Q She has always taken good care of the children?

"A Oh, yes."

Defendant questions the propriety of plaintiff having the custody of the children because she left them over a period of months when she went to California. Upon her departure she wrote a letter to defendant, a copy of which follows:

"Well, Milton—this is it. Thats why I felt as I did last nite knowing I was leaving the kids and wondering if I could take it. I decided it yesterday & accepted a job I was offered. You know if I had enough money I'd take my babies & go away since you insist on fighting a divorce the way you said.

"I've been stuffing food down my throat for 3 weeks & every bite lay like lead in my stomach— I gained a pound the first two weeks & have lost 2 the last week so now I'm down to 103 now. I can't take this any longer. I've been trying to hide my feelings but I can't do it much longer. I can't even like you so how can I let you love me.

"Maybe you think this is easy for me—but you'll never know how hard its been to leave LaJean & Brian. It will probably hurt worse later on—Im not looking forward to it. I'm glad I can work long hours so I won't have time to think too much. I could have told you I was going & I'd planned on it, but knew it would be the same thing all over again. And I think I'm ready to lose my mind now.

"I know you'll do right by LaJean & Brian as you are a good father. I can't deny that. You can see I'm leaving everything except for a few things I want. You should consider yourself lucky—I'd gladly take LaJean & Brian & you take the rest— but know I couldn't get far. The piano is LaJeans, always.

"Ive written to Mother & Dad & told them & I don't feel too happy about what their reaction will be when they read the letter. I don't know why

I had to be born to cause everyone so much misery, including myself.

"There's no use in writing more but—this—take good care of LaJean & Brian & don't make them hate me because I do love them so very much. It was a grave mistake that you & I ever met as we've never been completely happy with the exception of when I carried LaJean & I was then—in a dream I guess.

"Good Bye—
"Jo"

She was distraught and in a suicidal frame of mind; her husband, she claimed, threatened to kill her. She had only $300 in her possession at the time and was in poor circumstance to take the children with her. She could not sue for divorce at that point because of the time factor. Others might have done otherwise, but leaving the children with their father temporarily, knowing that he would take good care of them, does not prove that she is unfit to have them. Her parting letter portrays the situation and her love for her children much better than we are able to do.

▉ Under the circumstances, plaintiff is entitled to the custody of the two children with right of reasonable visitation by defendant. The property settlement and attorney's fees adjudged by the court are fair and reasonable. However, we believe defendant should be required to pay only the sum of $37.50 for the support of each of the children.

▉ We have no authority to allow plaintiff attorney's fees on the appeal. *Edwards v. Edwards,* 191 Or 275, 227 P2d 975.

Affirmed as modified.