Argued May 23; affirmed July 1; rehearing denied July 25, 1944

## PHILLIPS *v.* PHILLIPS

(149 P. (2d) 967)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*B. G. Skulason,* of Portland, for appellant.

*Richard B. Maxwell,* of Klamath Falls, for respondent.

LUSK, J.

This is a controversy over the custody of a minor child, Jo Ann Phillips, now approaching her seventh birthday. Her parents, the plaintiff and defendant in the suit, were married in 1931 and divorced January 15, 1940. The divorce suit was commenced by the plaintiff, Haines L. Phillips, who, in his complaint, alleged that "the defendant is a suitable and proper person to be awarded the custody of said minor child, Jo Ann Phillips." Elva E. Phillips (now Reynolds), the defendant, filed an answer and cross-complaint, and was awarded the decree of divorce and the custody of the child. This order was modified in April, 1940, so as to give the father the right of visitation. His exercise of that right was attended with disputes, quarrels, bitterness, and even shows of violence—once on the public streets of the city of Klamath Falls. On July 12, 1940, the plaintiff remarried, and his present wife, both before and since that event, has taken an active part in the controversy.

In July, 1940, Mrs. Reynolds took the child to the state of Washington. During her absence, in August, 1940, the plaintiff filed a motion, supported by affidavit, for modification of the decree so as to award him the custody of the child. Mrs. Reynolds had no actual knowledge of the motion or of the hearing thereon. Her attorney had withdrawn from the case and she had no attorney of record at the time. The only service of the motion was made on the clerk of the

court in conformity with the provisions of § 10-606, O. C. L. A. The hearing was *ex parte,* and at its conclusion the late Judge Carl Hendricks, who presided, entered an order awarding the custody of the child to the plaintiff. In this order, dated September 6, 1940, the following recitals will be found:

"It further appearing to the court that up to the time of the departure of the defendant as aforesaid the plaintiff faithfully complied with all the provisions of the decree herein as modified, on his part to be performed, and that in almost every instance when the plaintiff called for said minor child in accordance with the terms of the decree as modified the defendant placed obstacles in his way by refusing to allow him to see and have the companionship of said child at reasonable hours and by violently abusing and assaulting the plaintiff; and it further appearing that the defendant is a neurotic and unbalanced person and that she has many times since the entry and modification of said decree threatened to kill said child and to commit suicide; and that the defendant is no longer fit to have the custody of said child, that as long as said child remains in the custody of the defendant the child is in danger and that in any event the defendant will poison the mind of the child against the affiant and by her conduct will permanently injuriously affect the mind and character of the child."

In January, 1941, the plaintiff learned that Mrs. Reynolds and Jo Ann were in Mt. Vernon, Washington, proceeded thither, employed counsel, and sued out a writ of *habeas corpus* in the Superior Court of the State of Washington for the County of Skagit. Jo Ann was produced in court, and, after a hearing, the court on January 25, 1941, entered an order allowing the writ, and granting the care, custody and control of the child to the plaintiff, who returned with her to his home in Klamath Falls.

There were no further proceedings until December, 1942. In the meantime Mrs. Reynolds continued to live in Washington. She first worked as a clerk in a department store in Mt. Vernon, and later was employed for a year and a half in a responsible position with the Engineer Corps of the United States Army. On August 8, 1942, she was married to John Reynolds, a contractor, and now maintains her home with him in Seattle.

In December, 1942, the defendant made application to the court to modify the decree "by providing that defendant may have custody in whole or part of the minor child of the parties and the right to see and visit her at reasonable times if complete custody be not awarded defendant." After a hearing in February, 1943, before the Hon. Charles H. Combs, circuit judge for the 14th Judicial District, at which oral testimony was taken, the court, on April 12, 1943, entered an order denying the defendant's motion for change of custody, but providing that she might visit the child at such times and places as the parties might agree upon, and, if they could not agree, that the court would fix the times and conditions of such visits. They were not able to agree, and the court accordingly on May 4, 1943, entered an order "that upon 7 days written notice to plaintiff and for a period of not more than 7 consecutive days, defendant will be entitled to visit with her daughter, Jo Ann, and to have the said Jo Ann with her away from home of plaintiff and away from plaintiff and his representatives, between the hours of 10:00 a. m. and 5:00 p. m. of each day". The order further provided that the defendant should get Jo Ann at the plaintiff's home and not remove her from the city of Klamath Falls or its immediate vicinity.

Thereafter the plaintiff and his present wife moved to Portland and established his home there, and the court on May 27, 1943, entered another order permitting the defendant to see Jo Ann in Portland on certain specified days and providing "that defendant shall get the said Jo Ann at said 5246 N. E. Hoyt Street, in Portland, Oregon, and shall return her to said address each day and shall not remove the said Jo Ann from within the limits of Multnomah County, Oregon."

On June 26, 1943, the defendant again filed a motion, supported by affidavit, seeking the custody of Jo Ann. On the same day the defendant caused contempt proceedings to be instituted against the plaintiff charging that he had violated the court's order of May 27, 1943, by refusing the right of visitation granted by the court. The plaintiff filed an affidavit in opposition to the motion for change of custody, and, in his return to the order to show cause in the contempt proceedings, admitted that he had disobeyed the order of the court, as charged, but alleged that he did so because "he is convinced that the safety and perhaps the life of the child would be imperiled by permitting the defendant to have her in her sole custody even for a moment. The plaintiff knows from his association with the defendant while she was his wife and from her conduct since the commencement of this suit that she is a neurasthenic and a mentally deranged person, a paranoiac with homicidal tendencies."

On August 4, 1943, a hearing of both matters was had before Judge Combs. The plaintiff did not appear in person or by counsel. Neither was Jo Ann present, although the plaintiff had been personally served with an order requiring him to produce her at the hearing. The testimony of a number of witnesses was heard, including three physicians and surgeons, and the court,

having taken the case under advisement, on August 25, 1943, adjudged the plaintiff in contempt of court and imposed a fine of $50.00, and entered an order awarding the custody of the child to the mother, with the provision that the plaintiff ''may have the temporary custody and care of said minor child for a period to be during the summer school vacation, said Phillips to obtain said child at the home of defendant and to return said child to defendant's home at the end of said period.''

At this last hearing it was shown that on July 20, 1943, the defendant was served with a citation issued out of the Circuit Court of the State of Oregon for Multnomah County, Department of Probate, in a proceeding brought by the plaintiff and his wife, Zona Kelly Phillips, for the adoption of the child, Jo Ann, by the said Zona Kelly Phillips.

This appeal is taken from the order of August 25, 1943, awarding the custody of Jo Ann to the defendant.

LUSK, J.

Careful consideration of the entire voluminous record leads us to the conclusion that the order appealed from should be affirmed. No one, of course, can be absolutely certain of the rectitude of a judicial decision which is intended to secure, as nearly as may be, the future happiness and welfare of a little girl. A court can only use its reasoned judgment in choosing between what at best may be two evils, for the aftermath of broken homes is all too frequently the broken lives of innocent children. The very contentions in which separated parents engage over their right to control their offspring may inflict wounds upon the objects of their dispute which no court has it within its power to heal.

In the present case the trial judge, who presided over two hearings, observed both parties and heard them testify, and manifestly gave the closest attention to the evidence, prepared and filed a memorandum opinion in which he stated the reasons which impelled him to grant the mother's motion for the custody of her child. The considerations appearing from the record, which influenced him, impress us as ample warrant for his decision, and their statement answers every contention which counsel for the defendant has made in this court. The opinion of the trial judge is as follows:

"Defendant's motion came on for hearing at Klamath Falls, Oregon, August 4th, pursuant to the Court's Order of July 8th. Defendant, Elva E. Reynolds (Phillips), was present in person and by attorney. Plaintiff did not appear nor was the child Jo Ann, produced in Court. This was in direct defiance to the Court's Order of July 8th which was personally served upon Plaintiff, and a copy given his attorney in ample time for such appearances to be made. Plaintiff has offered no excuse for his failure to comply with this Order of the Court.

"Testimony was taken in support of Defendant's motion on said date and at Defendant's request the matter was continued until August 17th for further testimony. The record was closed on said latter date without the taking of additional testimony upon a statement by Defendant's counsel that the witness he had expected to call was not available. The Court has taken the matter under advisement until this time.

"At the hearing in February of this year, testimony was introduced to establish that Plaintiff, Haines L. Phillips, had adequately cared for Jo Ann and had provided her with an excellent home and surroundings. Plaintiff placed much reliance upon the contention that there had been no change of conditions since the Order of this Court, dated

September 6, 1940, by which Plaintiff was given the custody of Jo Ann; Plaintiff was also relying heavily upon the recitals in the Order that the Defendant was not a fit and proper person to have the custody of the child. This Court was convinced that Jo Ann was being adequately cared for at that time and was mindful of the rule that a Decree is final, while conditions remain unchanged. Although conditions relating to Defendant, Mrs. Reynolds, had changed in that she was re-married and able to adequately support and maintain Jo Ann, this Court felt these facts to be insufficient to justify a change of custody. The only testimony to support Plaintiff's contentions that Defendant was not a proper person to have custody of Jo Ann was that of Plaintiff and his second wife and was denied in toto by Defendant and her husband, but the Court gave this contention serious consideration in preparing the Orders mentioned above.

"The testimony introduced before this Court on August 4th, conclusively establishes not only a change of conditions requiring a further modification of the Decree for the best interests of the child, but also the competency and fitness of Defendant to have the permanent custody of Jo Ann. A brief review of the testimony will establish this. .

"The Defendant, Mrs. Reynolds (Phillips), testified in a manner similar to her testimony at the prior hearing. She asserted that her health was excellent, and that she had been and was physically and mentally able to occupy a position of trust and responsibility with the United States Army Engineers. Her testimony left no doubt as to her love and affection for Jo Ann, and her desire to further the child's well-being, as well as her ability to do so both in a material way and as a mother. Her testimony also established the fact that Plaintiff no longer lived in Klamath Falls, was not an officer in the Army Air Force, and claimed to live at 5246 Southwest Hoyt Street, Portland, where he was on June 14th. Because of her desire to see Jo Ann,

Mrs. Reynolds had visited this neighborhood on several other occasions but had been unable to see any signs of occupancy at this residence, particularly occupancy by a child.

"Defendant's husband, John E. Reynolds, gave similar testimony as to her health and as to the Phillips' residence and the lack of apparent occupancy of that residence. He left no doubt as to his belief in Mrs. Reynolds' ability to properly care for Jo Ann, and his own desire to assist in the care and support of this child.

"The conduct and appearance of Mrs. Reynolds before this Court on two occasions has disclosed surprising and commendable lack, upon her part, of ill-feeling against Plaintiff. Her sole concern appears to be the well-being of Jo Ann.

"A Miss Hicks who had been Mrs. Reynolds' superior in the office of the United States Army Engineers also testified on her behalf, corroborating Defendant's testimony. Miss Hicks had seen Mrs. Reynolds in the company of children and had been impressed with her affection toward the children and their pleasure in her company.

"There was also introduced the testimony of three physicians. Dr. Dean H. Osburne has practiced for many years in Klamath Falls, and has specialized in obstetrical work. He attended Mrs. Reynolds prior to the birth of Jo Ann, cared for her afterwards, and treated her at various times while she remained in Klamath Falls. He explained that her physical condition and mental condition had been excellent throughout this period. Dr. Osburne does not specialize in mental diseases, but it is his practice to observe closely the mental and nervous reaction to his patients in relation to childbirth, as this is important to their well-being. In his opinion, Mrs. Reynolds had been entirely normal. He examined her prior to the hearing and had detected no signs of any mental or nervous disorders. In his opinion she was a fit and proper person to have the custody of her daughter. Dr.

George H. Adler, a local physician of wide experience, examined Mrs. Reynolds on the day of the hearing and detected no signs of any mental or nervous disorders. In his opinion she is competent to have the custody of a minor child. Dr. Adler had carefully investigated the possibility of a condition of paranoia, but found no evidence that Mrs. Reynolds was suffering from any such condition. Paranoia is a progressive illness, and the fact that it does not exist today prevents it having existed in the past.

"By stipulation of counsel, the deposition of Dr. Donald A. Nicholson of Seattle, Washington was taken as a witness on behalf of Defendant. Dr. Nicholson has specialized for many years in the care and treatment of nervous and mental diseases. He had examined Mrs. Reynolds to determine her nervous and mental condition and had found her entirely normal. In his opinion she was a fit and proper person to have the custody of a child.

"Two other witnesses appeared on behalf of defendant. Mr. C. S. Elliott, manager of the J. C. Penney store in Klamath Falls testified that up until the time she left that city Mrs. Reynolds had been in his employ and was entirely normal except for a natural nervousness when she was engaged in court proceedings. The Honorable David H. Vandenberg, who had acted as Mrs. Reynold's attorney in the original divorce proceedings and in some subsequent proceedings, testified that she had always been a normal and well balanced individual, and, in his opinion, had been an exceptionally good mother. "The Order of September 6, 1940, which was signed by Judge Hendricks and which recites that defendant was not mentally fit to have the care and custody of Jo Ann, has been relied upon by plaintiff. This order, together with the motion and affidavit upon which it was based, has been made a part of the record in this case. This order was entered upon the default of defendant, in her absence, and without the taking of any testimony on her behalf. It shows

upon its face that it is based solely upon the affidavit of plaintiff himself, and that the court did not have the advantage of medical testimony at that time.

"This court is entirely convinced that Mrs. Reynolds is, and has been, a normal person mentally and physically, and that she is a fit and proper person to have the custody and care of Jo Ann.

"At the prior hearing considerable testimony was introduced to establish the fact that plaintiff had provided Jo Ann with excellent care and with a convenient and modern home. There was also rather optimistic testimony concerning plaintiff's expectations as an officer in the Army Air Force. The testimony at this hearing, the affidavits of plaintiff, and the communications of his counsel, conclusively show a great change in these conditions. Plaintiff is not in the Air Force but is engaged in "defense work" in Multnomah County. He has not maintained his home in Klamath Falls but has moved his family, including Jo Ann to the overcrowded city of Portland, and away from the surroundings to which she was accustomed. Plaintiff's conduct in refusing to obey the orders of this court, both as to himself and Jo Ann, a ward of this court, casts serious doubts upon his own fitness to have the exclusive custody and control of Jo Ann.

"The court has noted the fact that defendant was given the custody of the child originally and retained it in several proceedings prior to the default order of September 6, 1940. I have been impressed by the apparent stability of Mr. and Mrs. Reynolds in their appearances and testimony before me, but I have formed no similar opinion concerning plaintiff and his present wife.

■ "The court has been mindful throughout these proceedings of the principle announced in Sachs v. Sachs, 145 Ore. 30, that 'every child of tender years should be awarded to its mother unless she is grossly immoral or subjects the child to abuse, or gross negligence, provided she is in other respects

at least a fairly good parent'. This principle was recently reaffirmed by our Supreme Court in the case of Baier v. Baier, 36 Oregon Advance Sheets 1301, with a quotation from McKay v. McKay, 77 Ore. 14, which is directly applicable here:

> " 'It is enough to say that, except in very rare cases, the instinct of motherhood can be relied upon to give to a daughter of tender years a measure of loving care and attention which no other person can equal. The proper place for this little girl is with her mother.'

A consideration of all of the testimony before the court has convinced me that conditions have changed to such an extent that it is in the best interests of Jo Ann that she be given into the custody of her mother for a major portion of time during each year.

"Common experience indicates that a mother's love and care grow with the years, and in the case of a daughter, are of peculiar importance and significance in the later years of childhood and the early years of womanhood. I feel that the best interests of Jo Ann, now and in the future, will be served if she is given into the care and custody of her mother. The court is convinced that defendant Elva E. Reynolds (Phillips) can provide Jo Ann with a permanent and stable home, proper surroundings, ample material benefits, and a continuing maternal love and care, and that the best interests of the child will be served by awarding her permanent custody to the defendant.

"It is still the opinion of the court that every parent should have the right to see and visit with his child, and therefore plaintiff, Haines L. Phillips, should be allowed the temporary custody of Jo Ann for a period of not more than 30 consecutive days during the summer school vacation in each summer. Plaintiff should, of course, obtain Jo Ann at the home of defendant and return her to that home at the conclusion of his visit."

We adopt the reasons given in the foregoing opinion as our reason for affirming the order appealed from We give due weight to the trial judge's appraisal of the parties, based upon his personal observation of them. We need add only the following:

■■ The main challenge to the defendant's claim of fitness to have the custody of her child has been based upon her alleged mental condition. It is asserted that she is deranged and that the child's life would not be safe in her hands. This charge was first made by the plaintiff in August, 1940, and in the order of September 6, 1940, was found to have been proven. Although that order was entered upon an *ex parte* showing, and after a hearing of which the defendant had no actual notice, it is, nevertheless, an adjudication from which no appeal has been taken, and we are precluded from re-examining the question as of that time, strongly though we may suspect that the facts, even then, were otherwise. In renewing the charge that Mrs. Reynolds is deranged, the plaintiff says, in his return to the order to show cause in the contempt proceedings, that he learned of her mental condition while he and the defendant were husband and wife, and that "the safety and perhaps the life of the child would be imperiled by permitting the defendant to have her in her sole custody even for a moment." It will be recalled that in his complaint in the suit for divorce the plaintiff alleged that the defendant was a suitable person to have the custody of Jo Ann, and asked that her custody be awarded to defendant—the very person whom, as he now says, he knew at that time to be a maniac with homicidal tendencies. This inconsistency in the plaintiff's position, and the fact that Jo Ann was with her mother in Washington for over five months in 1940

and suffered no harm from that experience, are additional considerations supporting the conclusion of the circuit court.

■ The objection that it is not proper for the courts of this state to relinquish jurisdiction over the child by permitting her to go to Washington, the state of her mother's residence, is without merit. *Griffin v. Griffin,* 95 Or. 78, 87, 187 P. 598.

The order appealed from is affirmed.