Argued January 21; Modified March 2, 1948

# LEVELL *v.* LEVELL

190 P. (2d) 527

*Harry G. Hoy,* of Portland, argued the cause for appellant. With him on the brief was Arthur E. Prag, of Portland.

*Fred W. Bronn,* of Portland, argued the cause and filed a brief for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BAILEY, BRAND and HAY, Justices.

BRAND, J.

On the seventh day of August, 1946, the Circuit Court of the State of Oregon for Multnomah County made and entered a decree granting to the plaintiff, Esther M. Levell, a decree of divorce from her husband, David W. Levell. The court found that the plaintiff was a fit and proper person to have the care and custody of the two minor children of the parties, and provided:

> " * * * that the plaintiff have the care and custody of the said minor children of the parties hereto, Ronda Marie and Terry Earl, with reasonable visitation privileges to the defendant, and that

the defendant pay for the support of said children the sum of $50.00 per month beginning August 1, 1946, until the further order of this Court.''

Thereafter, on the fifteenth day of January, 1947, the defendant filed a motion for the modification of the said decree,

'' * * * so that the said decree as modified will contain a provision that the children must be kept within the jurisdiction of the Court and are not to be removed there-from, except upon order of the Court after ample notice to the opposing party and an opportunity to be heard thereon and that while the said children are not kept within the jurisdiction of the Court the provision for the payment of support money shall be suspended, and that while the plaintiff has the custody of the children, the said children shall be kept free from the influence of and association with immoral persons.''

On the sixteenth day of June, 1947, the Circuit Court denied defendant's motion, and he appeals.

The plaintiff and defendant were married at Portland, Oregon on December 8, 1940. In 1945, the parties became estranged, due in part at least, to quarrels over the plaintiff's relatives. In December, 1945, the plaintiff left the defendant and never returned to him thereafter. On February 1, 1946 the plaintiff moved to Vallejo, California.

While the plaintiff was living with the defendant in Oregon she became acquainted with Mr. Chester Winn, and she testified at the hearing upon the motion for modification of the decree as follows:

''Q What took you to Vallejo in the first place? Did you go there because this fellow Winn was there?

''A That is one reason.''

The evidence indicates that she lived in a so-called defense house in Vallejo, which was occupied by Mr.

Winn, Mr. Winn's mother, and his two sons. Plaintiff's mother was also there for considerable periods of time. When the plaintiff left the defendant in December, 1945, she took with her the daughter of the parties, Ronda Marie, who was born in 1944. Her second child, Terry Earl, was born in California in the spring of 1946. Ronda Marie remained in plaintiff's custody continuously from December, 1945, and Terry Earl also was in her custody continuously from the time of his birth. On June 3, 1946, the plaintiff filed in the Circuit Court of Multnomah County her suit for divorce and on August 7, 1946 she was awarded a decree, together with custody of both children. A property settlement, and apparently a generous one, was made out of court. Plaintiff returned to Vallejo and six months after the date of her decree, to wit, in February, 1947, she was married to Chester Winn with whom she now lives, together with his mother, his two children, and the two children of the parties hereto.

As indicated by his motion for modification of the decree, the defendant is not seeking any change in the custody of the children. His only complaint is that by virtue of the fact that the plaintiff had moved out of the state of Oregon, he has been deprived of the right of visitation which was expressly afforded to him by the divorce decree. The only relief which he seeks is an order requiring the mother to return to the state of Oregon with the children, and for an order providing that so long as the plaintiff retains the children outside of the jurisdiction of the court, the provision for the payment of $50.00 a month for support money for the children be suspended. The defendant makes no assertion of inability to pay the support money, nor of unwillingness to pay it, pro-

vided his right of reasonable visitation is preserved. In seeking an order relieving him from the monthly payments while the children are outside the state the defendant's purpose was, as he testified, to induce or compel plaintiff to return the children to Oregon. The defendant also asked for an order that plaintiff be required to keep the children free from the influence of, and association with immoral persons. The evidence discloses that in this connection he had reference to the plaintiff's mother. In his affidavit he states:

" * * * I am disturbed at the fact that the plaintiff apparently has her mother as a member of the household, the mother being a person of lax morals and with a very strong hatred for this plaintiff [defendant]. I feel that it is not fair to me that the plaintiff's mother should be in the household with my children, as she is not a fit or proper person to associate with growing children, and she has such an unreasonable dislike for me that it is certain she will endeavor to prejudice the children against me."

The evidence clearly establishes not only that defendant's right of visitation was made both difficult and expensive by reason of plaintiff's removal to California, it also establishes that the plaintiff deliberately obstructed the defendant in the exercise of his right of visitation. Plaintiff admits that she kept the defendant in ignorance of her address in California, the reason assigned being that she thought the defendant would come upon the pretense of a desire to see the children, when in truth his desire was to see her and induce her to return to him. She contends that his importunities brought upon her "such a nervous condition it wasn't right."

The defendant ultimately discovered her address in Vallejo and correspondence was had between them

leading up to his visit to that city at Christmas time 1946, plaintiff being as yet unmarried. Both parties testified at length concerning the circumstances of this visit. We find it unnecessary to discuss the evidence in detail. It is sufficient to state that the undisputed evidence was that defendant notified the plaintiff of his intention to visit the children, that he ultimately went to the dwelling of the plaintiff at a time when the plaintiff and her children were present, that she knew he was at the door, that the mother of the plaintiff went to the door and refused to permit the defendant to enter. He saw neither the plaintiff nor the children at any time during his trip to Vallejo. After remaining for some time, defendant returned to Portland.

We think it probable that the defendant was at least as interested in seeing the plaintiff as he was in seeing the children, but the fact remains that the plaintiff has directly violated the order of the court which gave to the defendant the right of reasonable visitation of the children.

The facts established by the record present a problem of no little difficulty. Serious objections may reasonably be urged against any solution which has been proposed by either party to the controversy.

■ The decisions of the various courts disclose a great diversity of opinion as to the proper solution of problems of this kind, but practically all of them agree that the decision rests in the sound discretion of the court and that the welfare of the children is the consideration of paramount importance. 154 A. L. R. 554, citing many cases. The power of a divorce court to permit the removal of the child from the jurisdiction in a proper case has been generally recognized. In

*Phillips v. Phillips,* 175 Or. 14, 149 P. (2d) 967, after several changes of custody, the minor child was awarded by the Oregon court to the mother who then lived in the state of Washington. The court said:

> "The objection that it is not proper for the courts of this state to relinquish jurisdiction over the child by permitting her to go to Washington, the state of her mother's residence, is without merit. Griffin v. Griffin, 95 Or. 78, 87, 187 P. 598."

■ On the other hand, courts have not hesitated in a proper case to prohibit the removal of the child from the jurisdiction. 154 A. L. R. 554. In cases in which the decree remains silent as to removal from the jurisdiction it appears that the parent to whom the child has been awarded may lawfully take it into another state. In *Barnes v. Lee,* 128 Or. 655, 275 P. 661 the father as plaintiff secured an Oklahoma divorce with custody of the minor child. The mother was given the right of visitation. Thereafter the father moved to Oregon with the child. The mother secured an order from the Oklahoma court awarding the custody of the child to her. She then brought habeas corpus in Oregon for possession of the child. The Oregon court dismissed the writ and upon consideration of the best interests of the child awarded the custody to the father. This court affirmed. We quote:

> "There was no disobedience of the order of the Oklahoma court in Lee's coming to this state and bringing the child with him, as long as there was no provision in the order that she was not to be taken from the state. Concerning this feature of the case, in Stetson v. Stetson, 80 Me. 483, 485 (15 Atl. 60, 61), it is said:
>
> " 'That the result of the decree may cause the removal of the child beyond the limits of the state, is not of itself an objection. This may be the effect

in any case. Though the parent receiving the custody may at the time be a resident within the state, there is no authority except in cases of crime, to prevent an immediate removal.'

"Although the foregoing may be stating the rule rather strongly, we are clearly of the opinion that, unless either the terms of the decree or its necessary implication forbids the removal of the child from the state, there is no violation of the order."

Except for the fact that the removal in the Barnes case was to Oregon instead of from Oregon, there is a striking resemblance between that case and the one at bar. In the Barnes case the mother had the right of visitation. The decree was silent as to the right of removal. The father moved to Oregon without permission of the court and it was held that he did not disobey the order of the Oklahoma court.

In *Griffin v. Griffin,* 95 Or. 78, 187 P. 598, the plaintiff wife secured a California divorce with custody of minor children. The decree forbade removal of the children from the jurisdiction and granted to the father the right of visitation. The mother received permission from the California court to take the children temporarily to Oregon. She came to the state with the children and remained here permanently. The California court ordered her to return the children to California which she failed to do. The father brought habeas corpus in Oregon, claiming the legal custody of the children under a subsequent order of the California court. This court held that the order relied upon by the father was void, that the mother still had legal custody under the order of the California court, that she was a bona fide resident of Oregon in spite of the fact that she had established residence here contrary to the order of the California court. This

court considered the welfare of the children and held that the mother was entitled to retain custody of the children in Oregon.

In *Duncan v. Duncan,* 293 Ky. 762, 170 S. W. (2d) 22, 154 A. L. R. 549, the plaintiff wife was granted a Kentucky divorce with custody of the minor children. Thereafter she filed a motion for an order authorizing her to move with her three infant children to Pennsylvania and supported the motion by evidence that such a change of residence was for the best interests of the children. The court said:

> "The sole question presented by this appeal is whether the chancellor erred in modifying the judgment so as to permit Mrs. Duncan to move to Pennsylvania and take the children with her. The only objection to the modification is that it will make the visitations of the father more difficult, but his convenience must give way to what is for the best interests of the children.''

Upon consideration of the best interests of the children the plaintiff's motion was allowed and it was held that the husband's salary and vacations "will afford him the opportunity to visit his children at reasonable intervals."

 The plaintiff personally appeared at the hearing on the defendant's motion to modify the decree. The court which granted the divorce had continuing jurisdiction to modify orders concerning custody and could order the plaintiff to return the children to the jurisdiction of the court which granted the divorce. *Marts v. Marts,* 15 C. A. (2d) Cal. 224, 59 P. (2d) 170; *Tinker v. Tinker,* 144 Okla. 97, 290 P. 185, 27 C. J. S., Divorce, § 317, p. 1187; *Morrill v. Morrill,* 83 Conn. 479, 77 Atl. 1; *Butler v. Butler,* 83 N. H. 413, 143 Atl. 471. The power to suspend an order for the payment of ali-

mony during the time that the mother illegally deprives the father of the right of visitation has also been recognized. *Leighton v. Leighton,* 48 R. I. 195, 136 Atl. 443; *Eberhart v. Eberhart,* 153 Minn. 66, 189 N. W. 592; *Anderson v. Anderson,* 207 Minn. 338, 291 N. W. 508. The question for decision here is not one of power but of judicial discretion. *Ward v. Ward,* 156 Or. 686, 68 P. (2d) 763, 69 P. (2d) 963; *Campbell v. Campbell,* 37 Wis. 206; Ex parte Vaughn, 205 Ala. 296, 87 S. 792.

■ If the question related to the suspension of an order for the payment of alimony for the use of the wife instead of an order for the support of the children, this court would direct that the payments of alimony be discontinued in view of the conduct of the plaintiff at Vallejo in wilfully obstructing the right of the defendant to visit the children, but in the case at bar, the question relates to the support, not of the plaintiff, but of the children who have done no wrong. The defendant is under a statutory duty to contribute to the support of his children which duty has not been terminated by the divorce. O. C. L. A., § 63-301. *Bartlett v. Bartlett,* 175 Or. 215, 152 P. (2d) 402. Restatement, Conflict of Laws, § 146, Comment b.

■ Since there was no express prohibition in the decree, we think that the taking of the children to California did not constitute a violation of any order of the Oregon court. But, her obstruction of the defendant's right of visitation when he came to Vallejo did constitute a violation of the Oregon decree. The right of visitation is important, not alone to the father, but also to the children. In seeking a suitable solution of the problem, we are confronted by the fact of plaintiff's remarriage and we may presume that she is dependent upon the earnings of her present husband for the support of herself and her children. Plain-

tiff's husband is gainfully employed in California. If, as the result of the entry of the proposed order, the plaintiff should return to Oregon with the children, but without her husband, the newly established home would be broken and additional expense would be imposed upon some one by reason of the maintenance of two establishments, one in California for her husband and his children, and one in Oregon for plaintiff and her children. On the other hand, if by reason of the entry of such a decree she should induce her present husband to remove to Oregon, the result would be the loss of his present employment and the probable transfer to Oregon, not alone of plaintiff and her present husband, but also of his family of dependents, with consequent economic uncertainty for all. The third possibility in the event that the proposed order should be entered is that the plaintiff would remain with her husband in California, thus being permanently deprived of any contributions from the defendant for the support of the children of the parties. This somewhat resembles the punishment of the children for the wrong of the plaintiff. We are not disposed to deprive the children of the benefit of the contributions which are required from the defendant under the decree of the court without evidence satisfactorily showing that those contributions are no longer necessary for the proper maintenance and support of the children. Unfortunately, the parties to the litigation have failed to enlighten the court upon this issue. We have no evidence concerning the present ability of the plaintiff and her husband to care for the minor children of plaintiff and defendant without the aid of the required contributions.

The defendant is entitled to visit his children at their home and at reasonable times, and to have the

children with him at reasonable times in the city of Vallejo, without interference or obstruction by the plaintiff, and without the interference or the presence of the plaintiff's mother. If the welfare of the children does not require that the defendant continue with his contributions to their support, then, in view of plaintiff's conduct, the defendant should be relieved of that obligation.

■ The defendant in his motion asks that the children be kept free from the influence of and association with immoral persons. While it may be true that the plaintiff's mother, Lura H. Strycker, was not domiciled with the plaintiff, nevertheless she does appear to have had close association with the children. Despite her proven hostility toward the defendant, Mrs. Strycker is the one who was selected by the plaintiff to deal with the defendant in connection with his attempted visit to the children. At that time, Mrs. Strycker was certainly staying with the plaintiff in Vallejo. The record contains the affidavit of Mary Dreesen, the former mother-in-law of Lura H. Strycker and also the affidavit of Rudie Dreesen, the stepfather of Albert Peterson, who was the former husband of Mrs. Strycker. Both affiants were close neighbors of Mrs. Strycker's and both testified that she was addicted to the excessive use of intoxicating liquors, that she had a bad influence upon Albert Peterson, both before and after their marriage, and that Mrs. Strycker was hostile to the defendant, David Levell. Albert Peterson states under oath that he first met Mrs. Strycker in a beer parlor, and that before his marriage to her he lived with her for a considerable period of time in lewd cohabitation. He states that Mrs. Strycker is a woman of bad morals, addicted to the use of intoxicating liquors to excess, and with a strong dislike for the

defendant Levell. The defendant, David Levell in his affidavit states that Mrs. Strycker became frequently drunk, that she is lax morally, and that upon one occasion he found her in a conclusively compromising position in a hotel in Roseburg. Mrs. Strycker, though present at the hearing, did not testify, but did file an affidavit. Her only reply to the charges concerning her moral character is to be found in the following ambiguous passage:

"He charges me with being a person of low morals, and unfit to be with the children, and makes the statement that I am living with my daughter, which is not true, although he states it as a fact.

"As to my character, I would submit as references the names of the following persons who live in Portland, Oregon:—"

Then follow the names of three persons residing in Portland, Oregon.

In view of the record, we hold that the defendant is entitled to an order requiring the plaintiff to keep the children free from the influence of and association with immoral persons, and free from the association with or influence of Lura H. Strycker.

The cause is remanded to the Circuit Court of Multnomah County for the modification of the decree in conformity with this opinion, and that court is further directed upon motion of the defendant to conduct a hearing concerning the financial condition of the respective parties, and the need, if any, of the children of the parties for the continued contributions by the defendant for their support. If the welfare of the children does not require the continued support of the defendant, then, in view of the conduct of the plaintiff, the duty of furnishing such support should be suspended so long as the children are kept outside of the

jurisdiction of the Oregon court. Any further failure on the part of the plaintiff to accord to the defendant the right of visitation in complete good faith would in our opinion constitute such a change in circumstances as to warrant a reconsideration by the trial court concerning the custody of the children.

The defendant will recover his costs.