Argued and submitted July 25, affirmed as
modified December 22, 1980, reconsideration allowed,
former opinion adhered to (51 Or App 129, 624 P2d 1092)
March 9, petition for review denied April 21, 1981 (290 Or 853)

In the Matter of the Marriage of

JEWELL,
*Respondent,*
*and*
JEWELL,
*Appellant.*

(No. D7808-13288, CA 15891)

620 P2d 967

Ira L. Gottlieb, Portland, argued the cause and filed the brief for appellant.

John S. Marandas, Portland, argued the cause for respondent. With him on the brief was James F. O'Rourke, Jr., Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

THORNTON, J., dissenting opinion.

**BUTTLER, J.**

Wife appeals from a decree dissolving the marriage of the parties, contending that she should have been granted custody of the minor children of the parties, a girl, age twelve, and a boy, age nine, and also contending that the division of the marital assets was not just and equitable. We affirm the award of custody of the children, but modify the property distribution.

In awarding custody of the children to father, wife contends that the trial judge overreacted to wife's extra-marital affairs going back to 1970, including an extended affair with her sister's husband, now former husband. Wife contends that there is no evidence that the affairs were shown to have adversely affected the children, and therefore did not justify taking custody of the children from her. *See Niedert and Niedert,* 28 Or App 309, 559 P2d 515, *rev den* (1977).

Our review of this lengthy record lends support to wife's contention with respect to the trial judge's reactions to wife, but taking the record as a whole we cannot say that the trial judge was clearly wrong in awarding custody of the children to father. Without detailing the evidence, it appears from the record that mother's four year relationship with her sister's husband has had an adverse affect on the two children, not because wife and her paramour engaged in sexual activity in the presence of the children, but because that affair has, apparently, caused a total breakdown in family relations between wife, her two sisters and brother, her parents, and the children's cousins. Wife has been blamed for the dissolution of her sister's marriage because of that extended affair, although wife denies that she was the cause of that dissolution. Further, the evidence indicates that mother has "excommunicated" herself from her family and that she has refused to allow the children to visit with mother's parents or the children's cousins.

On the other hand, father has maintained a close relationship with the children's grandparents and their cousins. He indicates that it is his intention to continue the family relationships, both with his family and mother's family. The evidence indicates that the children enjoyed

being with their cousins and other relatives, and that it is unlikely that they would be able to do that successfully if custody were granted mother.

Accordingly, we affirm the trial court's award of custody of the two minor children to father.

With respect to the property division, it appears that wife was awarded approximately $95,811 of the net assets having a total value of approximately $271,732. Although it is true that most of the property acquired by the parties was acquired as a result of husband's exceptional ability to invest in, and manage, a substantial number of properties, in addition to carrying on his regular vocation, it is also true that wife has contributed her share to the marital estate as a homemaker and mother for over 12 years, and as a helper in cleaning and maintaining the properties. The parties were married while mother was still in high school, and mother had her first child when she was eighteen.

On the other hand, the trial court did not award child support to husband and neither do we; accordingly, there is some justification for giving husband the "long-half" of the marital assets. *Kilpatrick and Kilpatrick,* 38 Or App 159, 589 P2d 1153 (1979); *Bainer and Bainer,* 27 Or App 703, 556 P2d 1377 (1976). We conclude, however, that wife should be awarded more than the trial court awarded her, and that this increase should be accomplished by modifying the decree to award wife a judgment against husband for $65,000 (instead of the $50,000 judgment awarded by the trial court), payable over a period of 119 months. To accomplish this modification, paragraph 8 of the decree is modified as follows:

> Respondent is awarded a judgment against petitioner in the sum of sixty-five thousand dollars ($65,000), which sum shall be paid at the rate of five hundred dollars ($500) per month, beginning September 1, 1979, until August 1, 1989, at which time the unpaid balance shall be due and payable. Interest shall accrue on the unpaid principal at the legal rate, beginning September 1, 1979.

Affirmed as modified.

**THORNTON, J.,** dissenting.

. The majority concedes that the trial court may have "overreacted" to wife's extramarital affairs, but concludes notwithstanding that

"we cannot say that the trial judge was clearly wrong in awarding custody of the children to the father."

For reasons which follow, I strongly disagree.

Contrary to the majority, my reading of this entire record persuades me that the trial judge clearly erred in awarding custody of the children to the father. The central impression one receives from examining the record and the decisions by the trial court and this court is this: that this mother is in effect being punished because of her extended relationship with her former brother-in-law; that the salutary rule of the best interest of the child has been ignored; and that these children now end up with the prospect of suffering more injury from the separation than the parties themselves.

Apparently the above mentioned affair broke up her sister's marriage to the brother-in-law and resulted in a bitter estrangement between this mother and her relatives. A considerable portion of the unduly lengthy record was devoted to this relationship, and some isolated prior indiscretions dating back to around 1970. I have examined this evidence and conclude without detailing it here that it does not even begin to provide a sufficient basis for taking these children from the custody of wife, who was the primary nurturing parent. Nor do I feel that the estrangement between the wife and her relatives should be considered as partial grounds for awarding custody to the husband, as the majority purports to do.

In the first place, the decision of the trial court and now the majority is contrary to the rule announced by this court in *Niedert and Niedert,* 28 Or App 309, 599 P2d 515, *rev den* (1977). Under the rule announced in *Niedert,* a change of custody case, where an extramarital relationship is not shown to have adversely affected the children, the alleged misconduct does not justify changing custody. While the instant case involves an original award rather than a change of custody, I believe that the same considerations are applicable. No such adverse effect referred to in

*Niedert* is established by a preponderance of the evidence here. To the contrary, notwithstanding her apparent attachment to her ex brother-in-law, wife is performing her parenting duties in a more than adequate fashion.

Second, the decision is plainly contrary to the cardinal rule of the best interests of the child. The primacy of this rule was recently reaffirmed by our Supreme Court in *Meier and Meier,* 286 Or 437, 595 P2d 474 (1979), where that court reversed this court in a unanimous decision involving the threatened moving of a minor child to Canada. *Accord: Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960); *Levell v. Levell,* 183 Or 39, 190 P2d 527 (1948); *Edwards v. Edwards,* 191 Or 275, 227 P2d 975 (1951). Here, wife was the primary nurturing parent throughout the marriage. She had sole custody of these children for approximately one year after the parents separated and before the case came to trial. She has always involved herself extensively with the children's activities, the son's Little League baseball and the daughter's intensive gymnastic activities. She has taken them on outings to the seashore and has ridden bicycles with them. She keeps an orderly home. There were no serious complaints about her homemaking.

Husband is a member of the Oregon National Guard. He spends a substantial portion of his free time away from home, looking after his properties, and, to a lesser extent, participating in military training. According to the evidence, the children, if in husband's custody, would be cared for by various baby sitters and neighbors while husband was at work, looking after his numerous property interests or on military duty.

All things considered, including the amount of time each party is in a position to devote out of each day and night to the care, supervision and guidance of these children, the record establishes that their interests will be better served by granting custody to their mother. ORS 107.137. Otherwise, these young children will be reared by a succession of baby sitters, with the periodic assistance of a busy, working father. I find this result wholly incompatible with the statutory standard of ORS 107.137, namely the best interest of the children.

In the recent case of *Van Dyke and Van Dyke,* 48 Or App 965, 970, 618 P2d 465 (1980), in setting aside an award of custody to the father we said:

> "The evidence in this case was that, prior to the parties' separation, the mother was the primary caretaker of the couple's son. Except for temporary periods of work of approximately three months time, she stayed at home and performed the traditional homemaker role. She cleaned the house, made the meals and cared for the parties' son. The father played the role of breadwinner, working regularly each day. This is not to say that he did not also attend to and spend time with the child, but only that the majority of the child-care duties fell on the mother's shoulder. * * *."

Further, in *Van Dyke* we quoted the following language from a similar case, *Derby and Derby,* 31 Or App 803, 806-07, 571 P2d 562 (1977), 31 Or App 1333, 572 P2d 1080, *rev den* 281 Or 323 (1978):

> " 'The undisputed evidence in this case was that the wife was not merely the mother but was also the primary parent. During the marriage she was not working and performed the traditional and honorable role of homemaker. She cleaned the house, cared for the children, fed the family, nursed them when sick and spent those countless hours disciplining, counseling and chatting with the children that every homemaker should. For some families the husband may perform this role and be the primary parent. In other families the parents evenly divide the role and there is no primary parent. In this family the husband played the traditional role of breadwinner, working eight to ten hours a day. In his off-hours he dedicated much time and attention to the children, but the lion's share of the child raising was performed by the wife. It is undisputed that the children were happy and well-adjusted and that the relationship between the wife and children was close, loving and successful. Although the same relationship unquestionably existed to a degree with the husband, the close and successful emotional relationship between the primary parent and the children coupled with the age of the children dictate the continuance of that relationship.' *Derby [and] Derby, supra,* 31 Or App at 806-807."

These principles followed in the above cases should be controlling in the case at bar.

For the foregoing reasons, I respectfully dissent.