Argued and submitted March 9,
affirmed as modified September 8, 1981

In the Matter of the Marriage of
SALCHENBERG,
*Appellant,*
*and*
SALCHENBERG,
*Respondent - Cross-Appellant.*

(No. 80-0544, CA 19256)

633 P2d 35

Robert T. Scott, Albany, argued the cause for appellant. With him on the brief was Scott & Norman, Albany.

Larry W. Stuber, Albany, argued the cause for respondent - cross-appellant. With him on the briefs was Decker, Beckham, Nelson, Stuber & Knower, P.C., Albany.

Before Joseph, Chief Judge, and Thornton and Richardson, Judges.

JOSEPH, C.J.

## JOSEPH, C. J.

Husband appeals from the portions of a dissolution decree concerning the amount and duration of spousal support. Wife cross-appeals from the trial court's failure to award her the family home and a one-half interest in husband's retirement plan. We affirm as modified.

The parties were married for 14 years. They had no children.[1] Husband is 39 years old and apparently in good health. For the past 11 years, he has been employed by Teledyne Wah-Chang, now earning $10.63 per hour. In 1980, his take-home pay averaged about $1,020 per month. He has a vested but unmatured interest in a pension plan under which he can retire as early as age 55, with benefits actuarily reduced for early retirement. Husband also owns and operates a commercial fishing boat and derives sporadic income from fishing on weekends and during periods of layoff at the plant.[2]

Wife is 44 years old, is in poor health and has had little work experience or vocational education. During the marriage, she worked approximately six months as a drape presser at a dry cleaning plant but was forced to quit because of her health. She suffers from bilateral degenerative arthritis, which restricts her ability to climb stairs, kneel or perform manual labor. She has not completed high school, but is enrolled at Linn-Benton Community College and working toward completion of her GED and an associate degree in secretarial science. She attends school through a CETA program and received a Basic Education Opportunity Grant for books, tuition and some living expenses for fall term 1980.[3] The duration of her CETA sponsorship is not in the record. At the end of two years, she plans to transfer to Oregon State University to complete her secretarial studies and expects to work eventually as a

---

[1] Husband is the non-custodial parent of two children from a previous marriage and pays $50 per month for support of one of these children.

[2] Husband testified that he made about $550 from fishing between July 15, 1980, and the time of trial, September 2, 1980.

[3] The grant amounted to $938. At the time of trial, wife had not yet received the funds. She testified that "[t]hey keep the money out there at the college, and I get it allotted for books and tuition."

medical or legal secretary. Wife apparently has no income other than the school related funding, which amounts to approximately $400 per month.[4]

The parties retained the personal property in their respective possessions. Husband kept the commercial fishing boat, a 1978 Ford pickup, an 18-foot Kinskill trailer, some guns, equipment and camping gear. Wife retained a 1974 Ford station wagon, the household goods and furnishings — which consist primarily of secondhand furniture and a few antiques — and her personal effects. Wife valued her share of the property at $2,000 and husband's share at $11,760. Husband valued the personal property retained by him at $9,200 and estimated that the value of wife's possessions was at least that much.[5] While the record shows wife received the "short share" of the personal assets, it does not reveal just how short that share is. The value of the family home acquired during the marriage was also disputed. The fair market value estimates were $27,500 and $35,000. The house is encumbered by first and second mortgages amounting to $14,482.

The trial court ordered that the home be sold by September 1, 1983, and the net proceeds be divided equally, wife in the meantime to have its use and occupancy and to pay the mortgages, taxes and insurance. Husband was ordered to pay the debts incurred by the parties during their marriage and to pay $350 per month to wife for 36 months and $200 per month thereafter as permanent support.

### Family Home

We will not disturb the trial court's division of the interest in the family home. With respect to the fairness of that division, the record reveals little but that the parties

---

[4] It is not clear whether wife's CETA funding and the Basic Education Opportunity Grant (BEOG) are *separately* available to wife. She testified that the BEOG was not the "same type" grant she had the "last" (presumably, summer) term; however, her monthly budget exhibit showed only a $400 monthly income from "CETA."

[5] Husband testified that the household goods were insured for $17,000, but admitted that this figure represented the replacement value suggested by his insurance agent and that he did not know the value of the personal property in an "open and fair market today."

could not agree on the values of their personal or real property. The record does not convince us that we can make a property division significantly preferable to that made by the trial court. *Frishkoff and Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980); *Pullen and Pullen,* 38 Or App 137, 589 P2d 1145, *rev den* 286 Or 449 (1979). We are not persuaded that its result was wrong. *Jewell and Jewell,* 49 Or App 903, 620 P2d 967, 51 Or App 129, 624 P2d 1092, *rev den* 290 Or 853 (1981); *McCoy and McCoy,* 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977).

## Spousal Support

■ ■   Considering the duration of the marriage, wife's age, health and education, the parties' relative earning capacities and standard of living enjoyed during the marriage, a spousal support award was appropriate. *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977); *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974); *see also, Maurer and Maurer,* 49 Or App 355, 619 P2d 964 (1980); *Armintrout and Armintrout,* 49 Or App 211, 619 P2d 658 (1980). Permanent support is also appropriate in this case. The trial court's award took into account the expectation that wife, after completing her training, will be able to earn more than she did at the time of trial, but the judge reasonably assumed that nevertheless there will still be a significant discrepancy between wife's standard of living based on her probable future income and what she would have enjoyed but for the dissolution. Should she fail to make reasonable efforts to become financially self-supporting and independent, the support may then be reexamined. ORS 107.412(2).

## Husband's Pension Plan

At trial wife requested:

"[T]hat the court award her one-half of the current monthly value of petitioner's retirement fund and that that amount should be paid to her at such time that petitioner begins to receive his retirement benefits. Further, that that amount should then reduce the obligation of permanent spousal support."

On appeal, she apparently requests an award of a portion of husband's retirement benefits in addition to spousal support.

■　　We have said that, while retirement benefits are not *per se* marital *property* to be divided at the time of dissolution, they nevertheless are to be considered in formulating the financial aspects of a dissolution decree. *Rogers and Rogers,* 45 Or App 885, 609 P2d 877, *modified* 47 Or App 963, 615 P2d 412, *rev den* (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853 (1981). But our cases have not gone so far as to require that a proportionate share of retirement benefits be awarded *in addition* to spousal support. *See, e.g., Vinson and Vinson,* 48 Or App 283, 287, 616 P2d 1180 (1980); *Rogers and Rogers, supra,* 45 Or App at 898; *Roth and Roth,* 31 Or App 65, 69, 569 P2d 693 (1977); *but see, Haftorson and Haftorson,* 49 Or App 205, 619 P2d 655 (1980), *rev den* 290 Or 491 (1981). Thus, while we find no error in the trial court's refusal to award wife a share of the pension benefits *in addition to* spousal support, we are of the opinion that consideration should have been given to the existence of the pension plan in determining the duration and amount of spousal support. Wife's "permanent" support would terminate, under the terms of the trial court decree, when she reaches age 62. Such a termination provision is common in dissolution decrees, and we presume that it is based on the present provisions of the federal Social Security law that permit a spouse in a marriage lasting longer than 10 years to look to the other spouse's Social Security rights as a source of benefits at age 62.

■ ■　　Effectively, then, what the trial court's decree would do is to leave to the husband *in toto* his pension plan and substitute for his support obligation her right, under existing law, to look to the Social Security system for her support. For us to approve that would be inequitable, for we have no way of assuring that the present Social Security law provisions for spouses will still be enforced to protect the wife in 1998. What we do know is that the husband has a vested right in the company pension plan and that the benefits of that plan can serve as security for her future. This is not an instance where the total assets available for distribution permit us to allocate such a share as would protect the wife optimally, *see Kathrens and Kathrens,* 47 Or App 823, 615 P2d 1079, *rev den* 290 Or 211 (1980), so the most equitable thing we can do in the circumstances is to

make her right to spousal support in the amount of $200 a month extend for her life, subject of course to ORS 107.412(2), as previously noted.[6]

Affirmed as modified. Costs to neither party.

---

[6] The award of $350 a month for 36 months is affirmed.