Argued and submitted March 9, 1981,
affirmed as modified January 25, 1982

In the Matter of the Marriage of

PLASTER,
*Appellant,*

*and*

PLASTER,
*Respondent.*

(No. 37441, CA 18945)

639 P2d 1287

Jules Drabkin, McMinnville, argued the cause for appellant. With him on the brief was Drabkin and Tankersley, McMinnville.

Paul S. Wiggins, Jr., Forest Grove, argued the cause for respondent. With him on the brief was Caldwell & Wiggins, Forest Grove.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Wife appeals a decree of dissolution, contending that the property division and spousal support awards are inequitable and that the award of attorney's fees to her was insufficient. We review *de novo,* ORS 19.125(3), and modify the decree.

The parties were married 25 years and raised four children. Husband has worked for a utility for 20 years. When the case was tried in 1980, husband was earning $1,100 monthly net pay.[1] He enjoyed the usual fringe benefits customarily provided to employes of a utility.[2] Wife worked primarily at home during the marriage. Her sporadic outside employment consisted of semi-skilled, low-paying jobs. She was not employed at the time of the trial. She had had little formal education or training.[3]

The dispute concerning the property division centers on (1) the residence of the parties, valued at $60,000, and (2) the pension plan provided by husband's employer.[4] The trial court awarded the residence to the parties as tenants in common and required it to be sold in four years, the net proceeds to be divided equally. Wife was given the right to occupy the house until it is sold. It is unencumbered by liens or mortgages; however, the parties borrowed

---

[1] At the time of trial husband was earning $9.69 hourly. His 1979 gross income exceeded $20,000.

[2] Husband had medical and dental insurance, life insurance with a face value of $59,000, four weeks paid annual vacation, a vested retirement plan, social security and reduced telephone rates.

[3] Among the benefits lost by wife as a result of the dissolution are (1) husband's life insurance, (2) medical and hospital insurance, (3) dental insurance, (4) survivor benefits under husband's pension plan and (5) reduced telephone rates.

[4] ORS 107.105(e) provides in part:

"* * * The court shall view the contribution of a spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage. * * *"

In *Grove and Grove,* 280 Or 341, 346, 571 P2d 477, *modified,* 280 Or 769, 572 P2d 1320 (1977), the Supreme Court said:

"Although [ORS 107.105(e)] is not directly applicable to spousal support awards, it indicates a legislative intent that the homemaker spouse, who is most likely to seek spousal support, be recognized as an economic contributor to the marriage rather than as a passive recipient of economic benefits provided by the breadwinner."

$10,000 from wife's parents, and they consider that loan to be secured by the residence. The court ordered that that loan be paid from the proceeds of the sale before the net proceeds are distributed.

Regarding husband's pension plan, the decree provides:

> "Petitioner [wife] shall have an amount equal to 40% of the present value, without diminution for taxes or otherwise, of Respondent's pension plan commencing upon receipt of the pension proceeds by the Respondent."

The pension plan is provided by husband's employer without any contribution from employees. Husband's pension rights vested after he had worked for the telephone company for 10 years. He will be eligible for retirement benefits in 13 years. The record indicates that if husband had terminated his employment at the time of trial, he would have been entitled to benefits of $344.24 per month at age 65 or $184.57 per month at age 58, which would be the earliest age he could receive pension benefits. The plan provides a number of options to be elected at the time an employee retires. He may receive 100% of the benefits during his life with no survivor benefits. He may instead elect reduced lifetime benefits, and his surviving spouse would then be entitled to benefits of monthly payments for life. If an employee dies before retirement, pension benefits are paid to the surviving spouse, but are not available to a former spouse.

The trial court awarded wife spousal support in the amount of $300 monthly for three years to allow wife to complete an educational program to fit her for employment. Wife here requests that she be awarded the residence, that husband be given his pension plan and that, in addition, she be awarded permanent spousal support. She contends that her suggested property division will give her a marital asset that offsets the value of husband's pension plan.

■ A pension plan, while not *per se* marital property, is to be considered in fashioning the financial aspects of a dissolution decree. *Franzke and Franzke,* 292 Or 110, 637 P2d 595 (1981); *Salchenberg and Salchenberg,* 53 Or App 744, 633 P2d 35 (1981); *Rogers and Rogers,* 45 Or App 885,

609 P2d 877, *modified* 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853 (1981). We said in *Salchenberg* that our cases have not gone so far as to require that a proportionate share of a pension plan be awarded in addition to spousal support. In *Rogers* we suggested that one approach in considering how to treat a pension plan in devising a decree is to award the spouse not entitled to the pension an offsetting distribution. That approach would be inequitable here because, while husband's pension plan has considerable value, he can begin to realize that value only upon retirement, which will occur at a minimum in 13 years. Thus, he would realize very little economically from the distribution of marital assets for a considerable period of time and then only if he survives to retirement age.

■ We have held that in the dissolution of a marriage of substantial duration we will attempt to see that the parties separate on as equal a basis as possible. *Lake and Lake,* 22 Or App 195, 538 P2d 97 (1975). Here the trial court did not separate the parties on an equal basis, because after the real and personal property is divided under the decree husband will continue to receive $1,100 monthly net pay, with periodic increases, while wife will receive only $300 monthly support for three years. Thus, while wife will initially receive about 25 percent of husband's *net* income, after three years her spousal support will be terminated while his income will continue and increase. His spousal support payments are tax deductible; her support is taxable. He will presumably receive periodic wage increases, while her support will remain constant in dollar amount but will decrease in purchasing power if inflation continues.

We will not ignore the reality recognized in *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified,* 280 Or 769, 572 P2d 1320 (1977),

"* * * [T]hat, at least until recent years, young women entering marriage were led to—if not expressly by their husbands-to-be, certainly implicitly by the entire culture in which they had come to maturity—that they need not develop any special skills or abilities beyond those necessary to homemaking and child care, because their husbands, if they married, would provide their financial support and security. We cannot hold that women who relied

on that assurance, regardless of whether they sacrificed any special career plans of their own when they married, must as a matter of principle be limited to the standard of living they can provide for themselves if 'employed at a job commensurate with [their] skills and abilities.' The marriage itself may well have prevented the development of those skills and abilities." 280 Or at 351.[5]

---

[5] In *In re Marriage of Brantner,* 67 Cal App 3d 416, 420, 136 Cal Rptr 635 (1977), the California Court of Appeals observed:

"* * * A marriage license is not a ticket to a perpetual pension and, as women approach equality in the job market, the burden on the husband will be lessened in those cases in which, by agreement of both parties, the wife has remained employed or at least has had the opportunity to maintain and refresh her job skills during marriage. However, in those cases in which it is the decision of the parties that the woman becomes the homemaker, the marriage is of substantial duration and at separation the wife is to all intents and purposes unemployable, the husband simply has to face up to the fact that his support responsibilities are going to be of extended duration—perhaps for life. This has nothing to do with feminism, sexism, male chauvinism or any other trendy social ideology. It is ordinary common-sense, basic decency and simple justice."

The economic plight of the working woman and the relationship of that problem to the issue of spousal support is discussed in many law journal articles. *See, e.g.,* Note, *Equity and Economics: A Case for Spousal Support,* 8 Golden Gate L Rev 443, 444-46 (1979), in which the following statement is made:

"The rise in the divorce rate and the concomitant decline in the award of spousal support can be attributed in part to the apparent belief of some members of the judiciary that jobs are increasingly available to women on a competitive basis with men. In actuality, the job market for women is dismal. The fact remains that women still face a job market geared to the married male. Despite the rapid growth of the female labor force in recent years, a woman seeking employment will find only a limited number of jobs available.

"Women are primarily concentrated in low paying, female-intensive industries and occupations. Unfortunately, little headway has been made in sex-desegregating higher paid, male-intensive fields, such as management, the trades, and certain professions. Moreover, contrary to public opinion, the disparity between women's and men's earnings has actually increased. Comparable educational attainment does not decrease this disparity, nor do women fare better in high paying job categories such as the professions or skilled technician positions.

"Women who have devoted their lives to homemaking often lack the experience and recognized skills necessary to compete in the job market. Single women with young children face the additional problem of inadequate childcare, which makes employment an impossibility for many. As long as women continue to face special problems in the job market, their need for spousal support will remain." (Footnotes omitted.)

A report by the National Commission on Working Women says older women who seek jobs in America face a double dose of discrimination — against their sex and against their age.

■     We conclude the approach adopted in *Salchenberg* is proper in this instance; that is, after payment of the loan from wife's parents the proceeds from the residence are to be divided equally, and wife should be given permanent spousal support in the amount of $300 monthly, in lieu of any specific share of husband's pension plan. Even with this level of permanent spousal support, wife will have to seek employment to provide herself a living. It is reasonable to assume that, even after she completes a training program, there will be a significant disparity between her economic situation and what she enjoyed during the marriage.

Oregon law gives husband ample opportunity in the future to attempt to demonstrate, after showing a material change in circumstances, that wife no longer needs support in whole or in part, ORS 107.135(1)(a),[6] or that she has not made a reasonable effort after ten years to become financially self-supporting and independent of him. ORS 107.407.[7]

---

"When they go to look for a job they encounter employers who have a lot of preconceived notions about older women that they will not be able to learn a job once they hit 45 or older - that they're set in their ways and it's not worth training them because they'll have difficulty learning and I think also that they think older women are likely to be sick a lot or stay out of work or things like that which in fact have been proven to be untrue."

Despite the discrimination, the report finds the number of women between 45 and 54 in the work force will increase by 50. in the next two decades. National Commission on Working Women, Women, Work and Age Discrimination, Challenging the Workplace Myths, (November, 1981).

[6] ORS 107.135(1)(a) provides:

"(1) The court has the power at any time after a decree of * * * dissolution of marriage * * *, to:

"(a) Set aside, alter or modify so much of the decree as may provide * * * for the support of a party; * * *."

[7] ORS 107.407 provides:

"If an individual has paid an amount of money in instalments for more than 10 years for the support of a former spouse under a court decree of annulment or dissolution of marriage that ordered such payment, and when the former spouse has not made a reasonable effort during that period of time to become financially self-supporting and independent of the support provided under the decree, the individual paying the support may petition the court that issued the decree to set aside so much of the decree as may provide for the support of the former spouse."

The residence is to be sold within four years from the effective date of the original decree, the debt of $10,000 is to be paid from the net proceeds of the sale, and the balance divided equally between the parties. Wife is awarded permanent spousal support in the amount of $300 monthly. Husband is awarded his pension plan. The decree is affirmed as modified.[8] No costs to either party.

---

[8] Wife contends that the attorney fees awarded to her were inadequate. We affirm that award.